[No. B213637. Second Dist., Div. Three. Sept. 17, 2009.]

LAS LOMAS LAND COMPANY, LLC, Plaintiff and Appellant, v. CITY OF LOS ANGELES, Defendant and Respondent.

838

COUNSEL

Akin Gump Strauss Hauer & Feld, Carlyle W. Hall, Jr., John A. Karaczynski, Edward P. Lazarus, Andrew Oelz; Alston & Bird, Steven W. Weston, Nicki Carlsen, Neal P. Maguire and Rebecca S. Harrington for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Susan D. Pfann, Assistant City Attorney; Meyers, Nave, Riback, Silver & Wilson, Amrit S. Kulkarni and Julia L. Bond for Defendant and Respondent.

Jarvis, Fay, Doporto & Gibson and Rick W. Jarvis for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

OPINION

**CROSKEY, J.**—Las Lomas Land Company, LLC (Las Lomas), appeals a judgment dismissing its petition for writ of mandate and complaint against the City of Los Angeles (city) after the sustaining of a demurrer without leave to amend. The city terminated its environmental review of a proposed development project and rejected the project before the completion of a draft environmental impact report (EIR), after Las Lomas allegedly spent millions of dollars in an effort to comply with the city's requirements. Las Lomas contends the city had a mandatory duty under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) to complete and consider an EIR before rejecting the project. We disagree. We also conclude that the pleading fails to adequately allege due process and equal protection violations, and that the sustaining of the demurrer was proper. We conclude further that having expressly declined an opportunity to amend its pleading in the trial court, Las Lomas cannot seek leave to amend for the first time on appeal. We therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual Background*

The city commenced efforts to expand its "sphere of influence" boundaries in November 2000 so as to encompass large areas north of the city and south of the City of Santa Clarita.[1] The city's planning director notified the City of

---

[1] A "sphere of influence" is "a plan for the probable physical boundaries and service area of a local agency." (Gov. Code, § 56076.) The local agency formation commission determines the

Santa Clarita in January 2003 that the city intended to annex the areas. The city council approved expanding the city's sphere of influence boundaries in May 2005, and the local agency formation commission approved the expansion of those boundaries in December 2006.

Las Lomas submitted an environmental assessment form to the city's department of planning in May 2002 as a preliminary application for development of a 555-acre site in an unincorporated area north of the city and south of the City of Santa Clarita. A large part of the proposed project site was within the city's newly expanded sphere of influence boundaries. The proposed project included approximately 5,800 dwelling units, 2.3 million square feet of office space, 250,000 square feet of community serving facilities, 250,000 square feet of retail space, a 300-room hotel, and 285 acres of open space. The department of planning issued a notice of preparation in June 2002, stating that the city would be the lead agency under CEQA and would prepare an EIR for the project. The notice of preparation stated that the requested authorizations included annexation of the site, approval of a specific plan, zoning, and development entitlements.

Las Lomas prepared and submitted a draft specific plan, preliminary draft environmental studies, and other materials to the city. Las Lomas met with the city's department of planning, department of transportation, department of water and power, department of public works, and other city departments on numerous occasions in the several years following the submission of its initial application. Las Lomas modified its proposal, including a reduction of the number of dwelling units from 5,800 to 5,553. It paid all funds requested by the city for environmental review, including tens of thousands of dollars in permit fees and other service fees. It also paid millions of dollars to consultants and others to prepare environmental studies and planning documents and to meet with city officials. Las Lomas provided the city with all requested information and complied with all of the city's requirements for environmental review.

Las Lomas offered to enter into an agreement with the city in mid-2007 to prepay the city's anticipated expenses for processing the EIR and requested project approvals. Two city council members, Richard Alarcon and Bernard Parks, introduced a motion in the city council to approve such a supplemental fee agreement, and the city council's planning and land use management committee recommended approval of the motion. Several project opponents

sphere of influence for each city and special district within the county. (*Id.*, § 56425.) If a city proposes the annexation of unincorporated territory, the local agency formation commission decides whether to approve or disapprove the proposal. (*Id.*, § 56375, subd. (a)(1).)

objected that it was premature to enter into a supplemental fee agreement before the time that Las Lomas had filed its formal application for development entitlements. In response, the department of planning advised Las Lomas to file a formal application for entitlements. Accordingly, Las Lomas filed its master land use permit application in September 2007, requesting approval of a development agreement, a specific plan, including a prezone ordinance, and development entitlements. The proposed project included approximately 5,553 dwelling units, 2.3 million square feet of office space, 250,000 square feet of retail space, a 300-room hotel, other facilities, and 285 acres of open space. The department of planning notified Las Lomas in December 2007 that the application was incomplete because it was missing a final EIR.

Councilmember Greig Smith opposed the proposed project and, Las Lomas alleges, made public statements exaggerating the environmental impacts of the project and making other misrepresentations. He allegedly asked several city departments to cease or delay their work in connection with environmental review of the project. Councilmember Parks requested a legal opinion by the city attorney regarding the city's legal obligations under CEQA. The city attorney provided an opinion letter in December 2007, stating that " 'a court would likely determine that the City initiated the Specific Plan and that the City [is] legally obligated to process the Las Lomas EIR and the Specific Plan.' " The letter stated further, " 'a lead agency is obligated to continue processing and complete an EIR required for a project as long as the project applicant continues to cooperate by paying required fees and submitting necessary information.' "

Councilmember Smith introduced a motion in the city council in February 2008 to suspend the environmental review process until the city council had made " 'a policy decision' " to resume the process. The city council's budget and finance committee recommended approval of the motion. The planning and land use management committee, in contrast, voted against the motion and again endorsed the competing motion by Councilmembers Alarcon and Parks. The city council considered both motions in March 2008, and approved a modified motion by Councilmember Smith for the city to "cease all work" on the proposed project, "not pre-zone beyond the current prezone R1-1," "not enter into a Supplemental Fee Agreement" with Las Lomas, "not assume the role of Lead Agency," "not process an EIR," and return to Las Lomas all materials associated with the project.[2] The city council denied the motion by Councilmembers Alarcon and Parks.

---

[2] All territory is automatically zoned R1-1 (single-family residential and within a designated height district) upon its annexation to the city, unless the city council adopts an ordinance specifying some other zoning. (L.A. Mun. Code, § 12.35.)

## 2. *Trial Court Proceedings*

Las Lomas filed a combined petition for writ of mandate and complaint against the city in June 2008, alleging that Councilmember Smith misrepresented the facts concerning the proposed project and exaggerated its environmental impacts in an effort to stop the project. Las Lomas alleged that the city had no rational basis to stop processing the project application before completing its environmental review of the proposed project, and that the decision was based on "irrational, arbitrary, discriminatory and illegitimate reasons." Las Lomas further alleged that, after commencing the environmental review process, the city had a mandatory duty under CEQA to complete its environmental review before making any decision to approve or reject the project. Las Lomas also alleged that the city's termination of its environmental review and rejection of the project before the completion of an EIR was unprecedented, that it denied procedural and substantive due process and equal protection, and that the city denied procedural due process by allowing Councilmember Smith to substitute a new motion for his original motion without prior notice and by not affording Las Lomas an opportunity to respond to new evidence.

Las Lomas alleged counts for (1) violation of CEQA; (2) denial of procedural due process under the United States Constitution, pursuant to title 42 United States Code section 1983 (section 1983); (3) denial of procedural due process under the California Constitution; (4) denial of substantive due process under the United States Constitution, pursuant to section 1983; (5) denial of substantive due process under the California Constitution; (6) denial of equal protection under the United States Constitution, pursuant to section 1983; and (7) denial of equal protection under the California Constitution. Las Lomas sought an ordinary writ of mandate on all counts compelling the city to complete the EIR for the proposed project before making any decision on the project, and also sought compensatory damages in excess of $100 million on the second, fourth, and sixth counts.

The city generally demurred to the complaint, arguing that CEQA applies only to projects that a public agency intends to carry out or approve. The city argued that it had rejected the project and therefore had no obligation under CEQA to complete an EIR for the project. The city also argued that its decision against annexation and prezoning the property was a legislative act to which procedural due process protections did not apply, that Las Lomas was not deprived of any constitutionally protected property interest, and that the petition and complaint failed to allege any irrational or arbitrary action.

The city requested judicial notice of the motion by Councilmember Smith approved by the city council, a record of the city council proceedings, and other items. Las Lomas opposed the city's demurrer and requested judicial notice of (1) materials prepared by the Natural Resources Agency in connection with amendments to the CEQA Guidelines (Cal. Code Regs., tit. 14, § 15000 et seq.), (2) the city's CEQA guidelines, and (3) the motion by Councilmember Smith approved by the city council.

The trial court stated at the conclusion of the hearing on the demurrer that it would sustain the demurrer on all counts. The court asked whether Las Lomas was requesting leave to amend the petition and complaint to allege a count based on misrepresentation "or leading you on and making you spend all this money." Counsel for Las Lomas responded "No," and, stated that "we don't need to plead promissory estoppel in terms of a separate cause of action."[3]

The trial court filed a minute order stating that CEQA "does not require a public agency to prepare and consider an EIR before it disapproves a project," citing *Main San Gabriel Basin Watermaster v. State Water Resources Control Bd.* (1993) 12 Cal.App.4th 1371 [16 Cal.Rptr.2d 288] (*Watermaster*).

---

[3] The following exchange occurred at the conclusion of the demurrer hearing:

The court: "Now, let's talk about leave to amend. First of all, I don't know that it's requested."

Counsel for Las Lomas: "Your honor, I don't know that we have anything more at this point in time without discovery or that sort of thing that we could allege in terms of specifics, which is one of the things that the courts have cautioned why not to grant the demurrer. . . ."

The court: "But you're not requesting leave to amend to allege some other theory? Some misrepresentation theory or anything like that—"

Counsel for Las Lomas: "No."

The court: "—as a basis for damages against the city—"

Counsel for Las Lomas: "No."

The court: "—or leading you on and making you spend all this money?"

Counsel for Las Lomas: "We have alleged the estoppel argument we have already alleged that I didn't have the opportunity to mention in my argument a few minutes ago, but that is one of the problems with the city's breach is that they don't take into account the fact that the federal constitution due process clause does allow—"

The court: "Well, I'm satisfied that you don't have any claims on these constitutional bases, but what I'm asking you is do you want to plead some sort of authority basis for recovery against the city for promissory—if you talk about estoppel, I guess you're talking about a promissory estoppel basis."

Counsel for Las Lomas: "No, we don't want to plead—we don't need to plead promissory estoppel in terms of a separate cause of action. It does allow us to get in, quote, 'past the special limits,' that the city is talking about."

The court: "There's no leave to amend granted, so the court does not have to be concerned about it. There is no leave to amend requested, so the court does not have to be concerned about it. So the demurrer to the petition and complaint is sustained."

The order stated that the petition and complaint prayed for a writ of mandate on all counts yet failed to "identify any source other than CEQA for the alleged duty to proceed with the preparation of an EIR despite the public agency's decision not to go forward with the project." The court therefore sustained the demurrer without leave to amend on all counts and did not separately address counts two through seven. The court granted the request for judicial notice by Las Lomas and denied the requests by the city.

The court entered a judgment of dismissal on January 7, 2009. Las Lomas timely appealed the judgment. Las Lomas filed a motion in this court seeking leave to amend its petition and complaint and leave to move the trial court for relief under Code of Civil Procedure section 473, subdivision (b). We deferred ruling on the motion until the filing of this opinion.[4]

## CONTENTIONS

Las Lomas contends (1) the city had a mandatory duty under CEQA to complete and consider an EIR before rejecting the project; (2) the complaint adequately alleged the denial of procedural and substantive due process, both based on and independent of the alleged CEQA violation; (3) the city denied equal protection by intentionally treating Las Lomas differently from other similarly situated applicants with no rational basis for the difference in treatment; and (4) this court should order leave to amend to allow Las Lomas to allege counts for promissory estoppel and inverse condemnation based on a regulatory taking, and additional facts supporting the constitutional counts.

## DISCUSSION

1. *Standard of Review*

We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. (*Schifando v.*

---

[4] We deny the motion as to the request for leave to move the trial court for relief under Code of Civil Procedure section 473, subdivision (b). Any such relief by the trial court would interfere with our exercise of jurisdiction on appeal. We express no opinion as to the timeliness or merits of such a motion. We will address below the request for leave to amend the complaint.

*City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*) We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

### 2. The City Had No Duty Under CEQA to Complete an EIR After Rejecting the Project

CEQA requires public agencies to consider the environmental impacts of proposed projects and to mitigate or avoid significant impacts, if feasible. (Pub. Resources Code, § 21002.) A public agency must prepare, or cause to be prepared, and certify the completion of an EIR for any project that it proposes to carry out or approve that may have a significant effect on the environment. (*Id.*, §§ 21100, subd. (a), 21151, subd. (a).) Before approving a project, a public agency must certify that an EIR was completed in compliance with CEQA, that the EIR reflects the agency's independent judgment and analysis, and that the agency's decisionmaking body reviewed and considered the information contained in the EIR. (Pub. Resources Code, § 21082.1, subd. (c); CEQA Guidelines,[5] Cal. Code Regs., tit. 14, § 15090.)

■ CEQA applies only to projects that a public agency proposes to carry out or approve, and does not apply to projects that the agency rejects or disapproves. (Pub. Resources Code, § 21080, subds. (a), (b)(5).) Section 21080, subdivision (a) states, "this division shall apply to discretionary projects proposed to be carried out or approved by public agencies . . . ." Subdivision (b)(5) states that CEQA does not apply to "[p]rojects which a public agency rejects or disapproves." Moreover, the specific requirement to prepare an EIR expressly applies only to projects that public agencies "propose to carry out or approve" (*id.*, § 21100, subd. (a))[6] or "intend to carry out or approve" (*id.*, § 21151, subd. (a)).[7] A public agency need not prepare an EIR for a project that it rejects.

---

[5] All further regulatory references to Guidelines are to the CEQA Guidelines (Cal. Code Regs., tit. 14, § 15000 et seq.) prepared by the Office of Planning and Research and adopted by the Natural Resources Agency. (Pub. Resources Code, § 21083.) "[C]ourts should afford great weight to the Guidelines except when a provision is clearly unauthorized or erroneous under CEQA." (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 391, fn. 2 [253 Cal.Rptr. 426, 764, P.2d 278].)

[6] "All lead agencies shall prepare, or cause to be prepared by contract, and certify the completion of, an environmental impact report on any project which they propose to carry out or approve that may have a significant effect on the environment. Whenever feasible, a standard format shall be used for environmental impact reports." (Pub. Resources Code, § 21100, subd. (a).)

[7] "All local agencies shall prepare, or cause to be prepared by contract, and certify the completion of, an environmental impact report on any project that they intend to carry out or

To require a public agency to prepare and circulate a draft EIR, and prepare a final EIR including responses to comments, before rejecting a project would impose a substantial burden on the agency, other agencies, organizations, and individuals commenting on the proposal, and the project applicant. Such a requirement would not produce any discernible environmental benefit and would not further the goal of environmental protection.

 Las Lomas argues that Public Resources Code section 21061 establishes a mandatory duty for a public agency to complete and certify an EIR before approving or rejecting any project. Section 21061 states, in relevant part, "An environmental impact report is an informational document which, *when its preparation is required by this division*, shall be considered by every public agency prior to its approval or disapproval of a project." (Italics added.) Section 21061 is expressly limited to projects for which an EIR is otherwise required by CEQA, and therefore does not apply to projects rejected by the agency.

Las Lomas also argues that Guidelines section 15270 requires a public agency rejecting a project to do so either before initiating environmental review under CEQA or after completing and certifying an EIR, and not at any time between those two events. Section 15270, subdivision (a) states, "CEQA does not apply to projects which a public agency rejects or disapproves." Subdivision (b) states, "This section is intended to allow an initial screening of projects on the merits for quick disapprovals prior to the initiation of the CEQA process where the agency can determine that the project cannot be approved." Las Lomas cites the Natural Resources Agency's discussion of section 15270, which states, in relevant part, "This exemption was originally added to CEQA because some applicants claimed that a public agency could not turn down a permit application without first preparing an EIR or Negative Declaration. The agencies believed that they should be able to reject an application if they could determine from a quick initial screening that the project was incompatible with existing zoning or some other requirement so that the agency would be without legal authority to approve the project. The Guidelines codify this interpretation that was the common understanding among people involved with the bill that created the exemption."[8]

---

approve which may have a significant effect on the environment. When a report is required by Section 65402 of the Government Code, the environmental impact report may be submitted as a part of that report." (Pub. Resources Code, § 21151, subd. (a).)

[8] The Natural Resources Agency adopted the Guidelines together with discussions explaining them. Although the discussions are not part of the California Code of Regulations, they may assist courts in construing CEQA and the Guidelines. (E.g., *City of Marina v. Board of Trustees of California State University* (2006) 39 Cal.4th 341, 366 [46 Cal.Rptr.3d 355, 138 P.3d 692]; *Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1201 [24 Cal.Rptr.3d 543].)

■ Neither Guidelines section 15270 nor the discussion expressly states that a public agency that has initiated environmental review of a proposed project must complete and certify an EIR before rejecting the project. Section 15270, subdivision (b), describes a particular circumstance that the statutory exemption of Public Resources Code section 21080, subdivision (b)(5) addresses, but does not suggest that the exemption is limited to only that particular circumstance. In light of our discussion above, we reject such a construction of either section 21080, subdivision (b)(5) or Guidelines section 15270. To the contrary, we conclude that if an agency at any time decides not to proceed with a project, CEQA is inapplicable from that time forward.

*Watermaster, supra*, 12 Cal.App.4th 1371, involved the proposed expansion of a landfill. The State Water Resources Control Board (State Board) initially approved the project without preparing an EIR. The trial court denied a petition for writ of mandate challenging that decision, but the Court of Appeal in an unpublished opinion held that the expansion of operations constituted a new project for which an EIR was required, and directed the issuance of a peremptory writ of mandate. (*Id.* at pp. 1374–1376.) The State Board then proposed to disapprove the project without environmental review under CEQA. After conducting a hearing and considering evidence concerning the environmental impacts, the State Board denied the proposed expansion. The project applicant then sought a " 'Supplemental Writ of Mandate' " compelling the State Board to vacate its decision and to complete and consider an EIR before deciding whether to approve or reject the project. The trial court denied relief. (*Watermaster, supra*, at pp. 1377–1378.)

*Watermaster, supra*, 12 Cal.App.4th 1371, concluded that the statutory requirement to prepare an EIR applied only to projects that a public agency proposes to carry out or approve, and therefore did not apply to the rejected project. (*Id.* at pp. 1379–1380, citing Pub. Resources Code, §§ 21100, 21151, 21108 & 21002.1.) *Watermaster* also relied on the statutory exemption of Public Resources Code section 21080, subdivision (b)(5), and concluded that the legislative history of the provision supported its application to all project rejections or disapprovals without qualification. (*Watermaster, supra*, at pp. 1380–1382.) *Watermaster* rejected the argument that Public Resources Code section 21061 required a public agency to complete and certify an EIR before approving or rejecting any project. (*Watermaster, supra*, at p. 1381.)

*Watermaster, supra*, 12 Cal.App.4th 1371, also addressed the argument that Guidelines section 15270, subdivision (b) limited the application of

the statutory exemption of Public Resources Code section 21080, subdivision (b)(5) to the "initial screening phase." (*Watermaster, supra,* at p. 1380.) *Watermaster* did not definitively reject this argument. Instead, the court stated that the terms " 'initial screening' " and " 'quick disapproval[]' " in Guidelines section 15270, subdivision (b) ordinarily might refer to any project disapproval before the certification of an EIR.[9] *Watermaster* concluded that section 15270, subdivision (b) did not limit a public agency's authority to reject a project "at any time *prior to the initiation of full CEQA review.*" (*Watermaster, supra,* at p. 1380, italics added.)

Las Lomas argues that *Watermaster, supra,* 12 Cal.App.4th 1371, supports the proposition that the statutory exemption of Public Resources Code section 21080, subdivision (b)(5) applies only to rejections or disapprovals that occur "*prior to the initiation of full CEQA review*" (*Watermaster, supra,* at p. 1380, italics added). According to Las Lomas, a public agency initiates full CEQA review by issuing a notice of preparation stating that it intends to prepare an EIR for the project. Las Lomas argues that the holding in *Watermaster* is limited to the circumstances where the public agency rejected the project before issuing a notice of preparation. We need not decide whether *Watermaster* is or is not distinguishable on this basis. Although *Watermaster* did not definitively reject the argument that Guidelines section 15270, subdivision (b) limits the application of the statutory exemption of Public Resources Code section 21080, subdivision (b)(5) to the "initial screening phase," we reject that argument for the reasons we have stated.

Las Lomas cites *Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215 [86 Cal.Rptr.2d 209] (*Sunset Drive*) for the proposition that a public agency has a ministerial duty to complete an EIR in a timely manner. In *Sunset Drive,* the developer of a proposed low-income housing project submitted a proposed draft EIR to the City of Redlands. Consultants hired by Redlands found flaws in the proposed draft EIR and in a revised proposed draft EIR produced in response to their criticisms of the first draft. After the developer submitted a third proposed draft EIR, Redlands failed to either approve the draft or indicate the manner in which it was inadequate. (*Id.* at pp. 219–220.) More than three and one-half years passed from the time that Redlands determined that the development applications were complete until

---

[9] "The terms 'initial screening' and 'quick disapproval' are not defined for purposes of CEQA Guidelines section 15270, subdivision (b) (Cal. Code Regs, tit. 14), and it can hardly be debated that disapproval without certification of an EIR would in the normal course of events be 'quick' in comparison to disapproval following the necessarily lengthy CEQA review process." (*Watermaster, supra,* 12 Cal.App.4th at pp. 1380–1381.)

the developer filed a petition for writ of mandate. (*Id.* at pp. 218, 219.) Redlands had adopted a time limit pursuant to Public Resources Code section 21151.5, subdivision (a)(1) requiring the completion and certification of an EIR within one year after the date of the acceptance of an application as complete. (*Sunset Drive, supra,* at p. 220.) *Sunset Drive* held that Redlands had a duty under section 21151.5 and its own local guidelines to complete and certify an EIR within that one-year period, and that the duty was enforceable by a writ of mandate. (*Sunset Drive, supra,* at p. 221.)

*Sunset Drive, supra,* 73 Cal.App.4th 215, did not address the question whether Redlands still proposed to consider and possibly approve the project or whether it had rejected or disapproved the proposal sometime after its initial study. Despite the lengthy delay, the parties and the court apparently regarded the proposed project as still under consideration. *Sunset Drive* therefore did not discuss whether an EIR was required under Public Resources Code sections 21100, subdivision (a) and 21151, subdivision (a), or whether the statutory exemption of Public Resources Code section 21080, subdivision (b)(5) applied. *Sunset Drive* therefore is not on point. Moreover, unlike the developer in *Sunset Drive,* Las Lomas does not allege a violation of the one-year limit imposed by Public Resources Code section 21151.5, subdivision (a)(1).

3. *Procedural Due Process Does Not Apply*

a. *Fourteenth Amendment*

■ The Fourteenth Amendment due process clause states that no state may "deprive any person of life, liberty, or property without due process of law." The procedural component of the due process clause ensures a fair adjudicatory process before a person is deprived of life, liberty, or property. (*Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 70 S.Ct. 652]; *Horn v. County of Ventura* (1979) 24 Cal.3d 605, 612 [156 Cal.Rptr. 718, 596 P.2d 1134] (*Horn*).) Not every denial of a fair hearing for which a remedy may be available under state law implicates constitutional due process. (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1178 [56 Cal.Rptr.2d 223] (*Clark*).) "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." (*Board of Regents v. Roth* (1972) 408 U.S. 564, 569 [33 L.Ed.2d 548, 92 S.Ct. 2701] (*Roth*).) The range of interests protected by procedural due process is limited. (*Id.* at p. 570.)

A person seeking a benefit provided by the government has a property interest in the benefit for purposes of procedural due process only if the person has "a legitimate claim of entitlement to it."[10] (*Roth, supra,* 408 U.S. at p. 577.) A benefit is not a protected property interest under the due process clause if the decision maker has the discretion to grant or deny the benefit.[11] (*Castle Rock v. Gonzales* (2005) 545 U.S. 748, 756 [162 L.Ed.2d 658, 125 S.Ct. 2796].) Whether such discretion exists is determined by reference to state and local law. (*Id.* at p. 757; *Clark, supra,* 48 Cal.App.4th at pp. 1180–1183.)

Las Lomas contends its ownership of the project site is a sufficient property interest to merit due process protection. An ownership interest alone does not cloak the prospect of developing the property with the protections of procedural due process. (*Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166, 181–184 [81 Cal.Rptr.2d 324] (*Breneric*).) Rather, a land use application invokes procedural due process only if the owner has a legitimate claim of entitlement to the approval, as we have stated. (*Ibid.*; *Clark, supra,* 48 Cal.App.4th at pp. 1180–1183.)

*Horn, supra,* 24 Cal.3d 605, involved the county's approval of a tentative subdivision map without notice to adjoining property owners. The plaintiff, who purchased adjoining property before final approval by the board of supervisors, challenged the approval on procedural due process grounds. (*Id.* at pp. 610–611.) *Horn* held that subdivision approvals were adjudicatory decisions subject to procedural due process requirements. (*Id.* at pp. 614–615.) *Horn* stated that land use decisions that substantially affect the property rights of owners of adjoining parcels may constitute deprivations of property for purposes of procedural due process, and held that the plaintiff adequately alleged that the subdivision would substantially interfere with the use of his property. (*Id.* at p. 615.) *Horn* therefore reversed the sustaining of a demurrer to the petition for a writ of mandate. (*Id.* at p. 620.) *Horn* establishes that adjoining property owners whose property interests are substantially affected by adjudicatory land use decisions are entitled to procedural due process. Contrary to the argument by Las Lomas, *Horn* does

---

[10] *Perry v. Sindermann* (1972) 408 U.S. 593 [33 L.Ed.2d 570, 92 S.Ct. 2694], decided the same day as *Roth, supra,* 408 U.S. 564, held that a former teacher at a public college might be able to show a legitimate claim of entitlement to job tenure under state law based on the college's practice and written policies. (*Perry, supra,* at pp. 599–603.) The Supreme Court stated, however, that "a mere subjective 'expectancy' " would not be protected by procedural due process. (*Id.* at p. 603.) Las Lomas argues that its reliance on the city's policies, practices, and representations indicating the city would complete and consider an EIR before rejecting the project created a constitutionally protected "reliance interest." We regard the purported reliance interest as a mere expectancy rather than a legitimate claim of entitlement.

[11] *Galland v. City of Clovis* (2001) 24 Cal.4th 1003 [103 Cal.Rptr.2d 711, 16 P.3d 130] (*Galland*), cited by Las Lomas in connection with procedural due process, involved substantive rather than procedural due process and is discussed *post.*

not support the proposition that the denial of a development application constitutes a deprivation of property for purposes of procedural due process.

*Cohan v. City of Thousand Oaks* (1994) 30 Cal.App.4th 547 [35 Cal.Rptr.2d 782] (*Cohan*) does not persuade us otherwise. *Cohan* involved the plaintiffs' application for approval of a subdivision map and other development approvals. The planning commission granted the approvals, but the city council initiated an appeal and denied the approvals. (*Id.* at pp. 552–553.) The plaintiffs filed a combined petition for a writ of mandate and complaint challenging the decision based on state law, the City of Thousand Oaks Municipal Code, and due process. (*Id.* at p. 553.) *Cohan* concluded that the city council violated the municipal code by failing to provide adequate notice of the grounds for appeal (*id.* at pp. 556–557), and that the city council created "at least the appearance of conflict of interest" (*id.* at p. 559) by so doing and by initiating its own appeal without authority to do so under the municipal code (*id.* at pp. 557–559). *Cohan* stated that the cumulative effect of the city council's actions was to deprive the plaintiffs of their substantive and procedural due process rights. (*Id.* at p. 561.)

*Cohan, supra,* 30 Cal.App.4th 547, referred to "due process" throughout the opinion, but did not discuss the subject in detail except in stating that "[l]and use decisions that affect property rights of adjacent landowners require procedural due process for the adjacent landowners *as well as for the applicants. (Horn* v. *County of Ventura, supra,* 24 Cal.3d 605, 615–616.)" (*Id.* at p. 558, italics added.) Apart from this statement, *Cohan* did not explain why the denial of a discretionary development approval would constitute the deprivation of property for purposes of procedural due process. We conclude that *Horn* does not support that proposition and that such a proposition is contrary to *Roth, supra,* 408 U.S. at page 577. Accordingly, we decline to follow *Cohan* to the extent that it relied on such a purported rule of law.

■ Las Lomas proposed the annexation of the site and approval of a development agreement, a specific plan, and development entitlements for the project. The city's decisions whether to seek to annex the site, enter into a development agreement, and adopt the proposed specific plan were discretionary decisions. Las Lomas can assert no claim of entitlement to the annexation, development agreement, specific plan, and development entitlements that it seeks. The city's denial of those benefits and decision not to proceed with the project therefore was not a deprivation of property for purposes of procedural due process under the Fourteenth Amendment.[12]

[12] To the extent that Las Lomas argues that the alleged due process violation concerns the city's failure to complete and consider an EIR as required by CEQA, rather than the denial of discretionary development approvals, we have already rejected the argument that the city had such a duty under CEQA.

(*Clark, supra*, 48 Cal.App.4th at pp. 1180–1183.) In light of our conclusion, we need not address the city's argument that the city council's decision was legislative rather than adjudicatory so procedural due process does not apply.

 b. *California Constitution*

■ Article I, section 7, subdivision (a) of the California Constitution states that "[a] person may not be deprived of life, liberty, or property without due process of law . . . ." A person need not be entitled to a benefit provided by the government to have an interest protected under this due process clause. (*People v. Ramirez* (1979) 25 Cal.3d 260, 263–264, 268 [158 Cal.Rptr. 316, 599 P.2d 622].) This California due process clause does not protect all conceivable property interests, but only those property interests or benefits that are conferred by statute. (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1071 [114 Cal.Rptr.2d 798]; *Schultz v. Regents of University of California* (1984) 160 Cal.App.3d 768, 786 [206 Cal.Rptr. 910]; see *Ramirez, supra*, 25 Cal.3d at p. 268 [established a framework to analyze "the due process safeguards required for protection of an individual's statutory interests"].) "The 'require-ment of a statutorily conferred benefit limits the universe of potential due process claims: presumably not every citizen adversely affected by govern-mental action can assert due process rights; identification of a statutory benefit subject to deprivation is a prerequisite.' [Citation.]" (*Ryan, supra*, 94 Cal.App.4th at p. 1071, quoting *Schultz, supra*, 160 Cal.App.3d at p. 786.)

Las Lomas argues in its opening brief on appeal that "state statutes set out procedures and broad standards for project approvals and other statutory benefits," but identifies no statutes or statutorily conferred benefits. Instead, Las Lomas cites language in its petition and complaint alleging that the city had a duty under CEQA to complete and consider an EIR before approving or rejecting the project. In light of our conclusion that the city had no such mandatory duty under CEQA, the argument that the purported duty estab-lished a statutorily conferred benefit for purposes of due process necessarily fails. To the extent that Las Lomas in its reply brief makes new arguments relating to the Los Angeles Municipal Code, we will not consider points raised on appeal for the first time in the reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 765–766 [60 Cal.Rptr.2d 770].)

 4. *Las Lomas Has Not Adequately Alleged a Substantive Due Process*
 *Violation*

■ Substantive due process protects against arbitrary government action. (*County of Sacramento v. Lewis* (1998) 523 U.S. 833, 845 [140 L.Ed.2d 1043, 118 S.Ct. 1708].) A substantive due process violation requires more than

"ordinary government error," and the " ' "arbitrary and capricious" ' " standard applicable in other contexts is a lower threshold than that required to establish a substantive due process violation. (*Galland, supra*, 24 Cal.4th at pp. 1032–1033.) A substantive due process violation requires some form of outrageous or egregious conduct constituting "a true abuse of power." (*Id.* at p. 1032.)

*Galland, supra*, 24 Cal.4th 1003, involved the application of a municipal mobilehome rent control ordinance to the owners of a mobilehome park. *Galland* articulated "the appropriate substantive due process standard for determining when an administrative body charged with implementing a law acts erroneously in such a way as to injure an individual's economic and property interests." (*Id.* at p. 1033.) *Galland* stated, " '[o]nly a substantial infringement of state law prompted by personal or group animus, or *a deliberate flouting of the law that trammels significant personal or property rights*, qualifies for relief . . . .' " (*Id.* at p. 1034.) The particular standard applied in *Galland* may differ from the standard applicable here. Regardless of the precise formulation of the appropriate standard, some form of outrageous or egregious conduct constituting "a true abuse of power" is required to establish a substantive due process violation. (*Id.* at p. 1032.)

█ Typical land use disputes involving alleged procedural irregularities, violations of state law, and unfairness ordinarily do not implicate substantive due process. (*Stubblefield Construction Co. v. City of San Bernardino* (1995) 32 Cal.App.4th 687, 709–710 & fn. 15 [38 Cal.Rptr.2d 413] (*Stubblefield*).) *Stubblefield* stated, " 'rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. [Citations.] Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. [Citation.] The doctrine of substantive due process "does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents 'governmental power from being used for purposes of oppression,' or 'abuse of governmental power that shocks the conscience,' or 'action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests.' " [Citations.]' " (*Stubblefield, supra*, at pp. 709–710, quoting *PFZ Properties, Inc. v. Rodriguez* (1st Cir. 1991) 928 F.2d 28, 31–32.)

*Stubblefield* held that evidence that an individual city council member vigorously opposed a development project and proposed an ordinance to block the project, and that city officials initially supported the development but the city council later prevented the development, was insufficient, as a matter of law, to establish a substantive due process violation. (*Stubblefield,*

*supra*, 32 Cal.App.4th at pp. 710–711.) Similarly, *Breneric, supra*, 69 Cal.App.4th at pages 184–186, affirmed the sustaining of a demurrer and held that allegations that city council members were hostile to a developer because of his prior business activities in the city were insufficient to support a substantive due process violation.

Las Lomas alleges that Councilmember Smith vigorously opposed the project, made misleading public statements concerning the project, and successfully moved the city council to terminate the environmental review process and "cease all work" on the project. Las Lomas also alleges that after expanding its sphere of influence to include much of the proposed project area, the city changed course by deciding not to proceed with the proposed development. Las Lomas alleges further that the city violated CEQA by failing to complete and consider an EIR before rejecting the project and that the modified motion by Councilmember Smith was made without proper notice or an opportunity to respond to new evidence.[13] We conclude that these allegations are insufficient to establish a substantive due process violation. These allegations, if true, do not amount to an outrageous or egregious abuse of power of constitutional dimension.

5. *Las Lomas Has Not Adequately Alleged an Equal Protection Violation*

■ The federal equal protection clause (U.S. Const., 14th Amend.) and its California counterpart (Cal. Const., art. I, § 7, subd. (a)) provide that persons who are similarly situated with respect to the legitimate purpose of a law must be treated alike under the law. (*Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439 [87 L.Ed.2d 313, 105 S.Ct. 3249]; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].) Equal protection challenges typically involve claims of discrimination against an identifiable class or group of persons. The United States Supreme Court in *Village of Willowbrook v. Olech* (2000) 528 U.S. 562, 564 [145 L.Ed.2d 1060, 120 S.Ct. 1073] (*Olech*), however, held that a plaintiff who does not allege membership in a class or group may state a claim as a " 'class of one.' " (*Id.* at p. 564.)

The plaintiff in *Olech, supra*, 528 U.S. 562, requested a connection to the municipal water supply. The Village of Willowbrook agreed to connect the plaintiff's property provided that the plaintiff granted the village a 33-foot easement. The plaintiff objected on the grounds that the village had required only a 15-foot easement from other property owners making the same

---

[13] To the extent that the alleged substantive due process violation is based on the city's failure to comply with a mandatory duty under CEQA to complete and consider an EIR, we have already rejected the argument that the city had such a duty under CEQA.

request. After a three-month delay, the village agreed to provide the connection in exchange for a 15-foot easement. The plaintiff then sued the village for denial of equal protection, alleging that the demand for a 33-foot easement was " 'irrational and wholly arbitrary' " and "was actually motivated by ill will resulting from the Olechs' previous filing of an unrelated, successful lawsuit against the Village." The federal district court dismissed the lawsuit for failure to state a cognizable claim. (*Olech, supra,* at p. 563.)

The United States Supreme Court concluded that the complaint alleged a valid claim under the equal protection clause. (*Olech, supra,* 528 U.S. at p. 565.) *Olech* stated, "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. [Citations.]" (*Id.* at p. 564.) *Olech* stated that the complaint adequately alleged "that the Village intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners . . . that the Village's demand was 'irrational and wholly arbitrary' and that the Village ultimately connected her property after receiving a clearly adequate 15-foot easement." (*Id.* at p. 565, citation omitted.) *Olech* concluded that those allegations were sufficient to allege an equal protection violation "quite apart from the Village's subjective motivation," and stated the Supreme Court would not address "the alternative theory of 'subjective ill will.' " (*Ibid.*)

Thus, a "class of one" equal protection claim is sufficient if the plaintiff alleges that (1) the plaintiff was treated differently from other similarly situated persons, (2) the difference in treatment was intentional, and (3) there was no rational basis for the difference in treatment. (*Olech, supra,* 528 U.S. at p. 564; *Genesis Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.* (2003) 113 Cal.App.4th 597, 605–606 [6 Cal.Rptr.3d 574] (*Genesis*).) The third element is essentially the same rational basis test typically applied in some other types of equal protection cases.

The rational basis test is extremely deferential and does not allow inquiry into the wisdom of government action. (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [124 L.Ed.2d 211, 113 S.Ct. 2096].) A court must reject an equal protection challenge to government action "if there is any reasonably conceivable state of facts that could provide a rational basis for the [difference in treatment]. [Citations.]" (*Id.* at p. 313; accord, *Lindquist v. City of Pasadena, Tex.* (5th Cir. 2008) 525 F.3d 383, 387; *RJB Properties v. Board of Educ., City of Chicago* (7th Cir. 2006) 468 F.3d 1005, 1010.) "Where there are 'plausible reasons' for [the] action, 'our inquiry is at an end.' [Citation.]" (*Beach Communications, supra,* 508 U.S. at

pp. 313–314.) Under the rational basis test, courts must presume the constitutionality of government action if it is plausible that there were legitimate reasons for the action. In other words, the plaintiff must show that the difference in treatment was " 'so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational.' " (*Gregory v. Ashcroft* (1991) 501 U.S. 452, 471 [115 L.Ed.2d 410, 111 S.Ct. 2395].) Proving the absence of a rational basis can be an exceedingly difficult task. In some circumstances involving complex discretionary decisions, the burden may be insurmountable.

*Engquist v. Oregon Dept. of Agriculture* (2008) 553 U.S. 591 [170 L.Ed.2d 975, 128 S.Ct. 2146] (*Engquist*) held that the class of one theory of equal protection has no application in the context of public employment decisions. (*Id.* at p. ___ [128 S.Ct. at p. 2156].) *Engquist* explained that the rational basis test is incompatible with complex, discretionary decisionmaking and stated, "[t]his principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." (*Id.* at p. ___ [128 S.Ct. at p. 2154].) *Engquist* stated, "[i]t is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." (*Ibid.*) Although the holding in *Engquist* was limited to the public employment context, we believe that its reasoning applies more broadly. *Engquist* explained: "What seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed. There was no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations—at least not with regard to easement length, however typical such determinations may be as a general zoning matter. See [*Olech, supra*, 528 U.S.] at [page] 565 [120 S.Ct. 1073] (BREYER, J., concurring in result). Rather, the complaint alleged that the board consistently required only a 15-foot easement, but subjected Olech to a 33-foot easement. This differential treatment raised a concern of arbitrary classification, and we therefore required that the State provide a rational basis for it." (*Engquist, supra*, 553 U.S. at pp. ___–___ [128 S.Ct. at pp. 2153–2154].)

▪ "There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a

particular person would undermine the very discretion that such state officials are entrusted to exercise." (*Engquist, supra*, 553 U.S. at p. \_\_\_ [128 S.Ct. at p. 2154].)

The proposed project—involving the annexation of a substantial area, a specific plan, zoning, and development entitlements—presented complex urban planning and land use issues. The decision whether to approve a project of this sort ordinarily would involve numerous public policy consider-ations and the exercise of discretion based on a subjective, individualized determination. Such a decision is the antithesis of the simple issue presented in *Olech, supra*, 528 U.S. 562, concerning the consistent imposition of a 15-foot easement as a condition for a water service connection. There are numerous conceivable legitimate reasons why the city would choose not to expand its boundaries and facilitate growth in this particular area at the time. The facts alleged in *Olech*, if true, would have established that an easement in excess of 15 feet was not rationally related to any legitimate governmental purpose.[14] Here, in contrast, the allegations concerning a city council mem-ber's efforts to defeat the proposed project and alleged procedural errors in connection with the city council vote cannot establish a factual basis on which to conclude that the decision to reject the project was wholly irrational. We therefore conclude that the complaint fails to adequately allege a "class of one" equal protection violation.[15]

Our conclusion that Las Lomas has failed to allege a constitutional violation does not mean that there is no remedy for a developer in similar circumstances, but only that the due process and equal protection clauses of the Fourteenth Amendment and the California Constitution afford no remedy.

### 6. *Las Lomas Is Not Entitled to Leave to Amend*

Las Lomas moves this court for leave to amend its petition and complaint to allege counts for promissory estoppel and inverse condemnation based on a regulatory taking, and to allege additional facts supporting its constitutional

---

[14] *Genesis, supra*, 113 Cal.App.4th 597, is similarly distinguishable. *Genesis* held that allegations that the defendant air pollution control district had erroneously and arbitrarily determined that the plaintiff was ineligible to perform air emissions testing within the district were sufficient to allege a "class of one" equal protection claim. (*Id.* at pp. 602, 605.) *Genesis* stated that the defendant allegedly violated its own mandatory rule and had no discretion to do so. (*Id.* at p. 607.) Thus, *Genesis* involved the alleged discriminatory application of a mandatory rule, rather than a discretionary decision based on complex public policy considerations.

[15] To the extent that the alleged violation of equal protection is based on the city's failure to comply with a mandatory duty under CEQA to complete and consider an EIR, our conclusion that the city had no such duty compels the conclusion that Las Lomas cannot allege an equal protection violation based on the violation of such a duty.

counts.[16] The sustaining of a demurrer without leave to amend is an abuse of discretion if there is a reasonable possibility that the defect could be cured by amendment. (*Schifando v. City of Los Angeles, supra*, 31 Cal.4th at p. 1081.) The burden is on the plaintiff to show in what manner the pleading could be amended and how the amendment would change the legal effect of the pleading. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) The failure to request leave to amend in the trial court ordinarily does not prevent a plaintiff from making such a request for the first time on appeal. (Code Civ. Proc., § 472c, subd. (a);[17] *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [272 Cal.Rptr. 387].)

The general rule allowing a plaintiff to request leave to amend for the first time on appeal does not apply, however, if the trial court sustains a demurrer with leave to amend and the plaintiff elects not to amend the pleading. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091 [32 Cal.Rptr.3d 483, 116 P.3d 1162].) In those circumstances, " 'it must be presumed that the plaintiff has stated as strong a case as he can.' " (*Ibid.*) The trial court here did not enter an order sustaining the demurrer with leave to amend, but instead asked whether Las Lomas was requesting leave to amend.[18] By answering "No," counsel for Las Lomas expressly declined an opportunity to amend the pleading just as surely as if the court had granted leave to amend and Las Lomas had elected not to do so. In our view, the result should be the same. We therefore conclude that Las Lomas forfeited its claim of error based on the denial of leave to amend and deny the motion for leave to amend its petition and complaint. Whether Las Lomas might have been entitled to relief under a theory other than those alleged in the petition and complaint is not an issue that we need to reach or decide.

---

[16] A promise that the promisor reasonably should expect to induce action or forbearance and that does induce action or forbearance is binding under the equitable doctrine of promissory estoppel if enforcement of the promise is necessary to avoid an injustice. (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310 [96 Cal.Rptr.2d 747, 1 P.3d 63].) " 'The remedy granted for breach may be limited as justice requires.' " (*Ibid.*, quoting Rest.2d Contracts, § 90, subd. (1).) A promise must be clear and unambiguous to be binding under the doctrine. (*Lange v. TIG Ins. Co.* (1998) 68 Cal.App.4th 1179, 1185 [81 Cal.Rptr.2d 39].) Promissory estoppel may not be invoked against a governmental entity if " 'it would operate to defeat the effective operation of a policy adopted to protect the public.' [Citation.]" (*Kajima/Ray Wilson, supra*, at p. 316.)

[17] "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made." (Code Civ. Proc., § 472c, subd. (a).)

[18] See footnote 3, *ante.*

## DISPOSITION

The judgment is affirmed. The city is entitled to recover its costs on appeal.

Klein, P. J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 17, 2009, S177425.