Filed 11/6/15  Drum v. City of Los Angeles CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOEL DRUM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B256217<br><br>(Los Angeles County<br>Super. Ct. No. BC494337) |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Elihu M. Berle, Judge.  Affirmed.

Joel Drum, in pro. per., for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Ronald Whitaker, Assistant City Attorney and

Gabriel S. Dermer, Deputy City Attorney, for City of Los Angeles.

## INTRODUCTION

Plaintiff Joel Drum appeals from the judgment of dismissal entered after the trial court sustained a demurrer to his second amended complaint brought by defendant City of Los Angeles (City). Drum argues parking restrictions imposed by the City on the street where he lives, which prohibit street parking for two hours each week in order to accommodate street cleaning, violate the equal protection clause of the Fourteenth Amendment to the United States Constitution. Drum also contends the court erred by finding, as a matter of law, that a plaintiff *in propria persona* cannot be the class representative in a class action lawsuit. We conclude the operative complaint fails to state an equal protection claim, and therefore we affirm the judgment. We need not, and therefore do not, consider whether a self-represented litigant may also act as a class representative in a class action lawsuit.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the operative complaint, the City provides street cleaning services in selected residential neighborhoods in Los Angeles. In those neighborhoods, the City adopted parking restrictions that prohibit cars from parking on the street during a specific two hour time period each week when street cleaning is scheduled to take place. The City posted signs on affected streets notifying drivers of the parking restrictions.

Drum lives in a neighborhood that receives street cleaning services and received a citation for parking on the street during the posted street cleaning time period. He filed a class action complaint against the City, claiming the street sweeping program and its related parking restrictions violate the equal protection clause of the Fourteenth Amendment to the United States Constitution. Drum alleged that, by imposing its street sweeping program in only some Los Angeles neighborhoods, the City subjected residents that live in the areas receiving street cleaning services to an increased risk of receiving a parking citation, while other residents would "never" be in jeopardy of receiving a citation,. In addition, Drum alleged no rational basis supported the City's decision to implement its street cleaning program in some, rather than all, Los Angeles

2

neighborhoods. Drum filed his complaint on behalf of "all persons who reside in the City of Los Angeles in a location that has parking restrictions in front of, or near to, their residence for weekly street cleaning and who, as has plaintiff, have received a citation for parking in violation of the restrictions within three years of the date the original [complaint] was filed." Drum, who opted to proceed *in propria persona*, alleged he would "fairly and adequately represent and protect the interests of the proposed class . . . ."

In response to the original complaint, the City moved to strike the class action allegations on the ground that "a plaintiff in pro per cannot be an adequate class representative as required by CCP § 382." After receiving written opposition from Drum and hearing oral argument, the court granted the City's motion to strike. Drum subsequently amended his complaint twice and each time restated the class action allegations. After Drum filed his second amended complaint, the City filed another motion to strike the class action allegations and a demurrer. Primarily, the City asserted Drum failed to identify any unequal treatment resulting from the City's parking restrictions and that, in any event, the City's street cleaning program—and the parking restrictions designed to facilitate it—were rationally related to a legitimate governmental purpose. At the hearing on the demurrer, Drum conceded he could not further amend his equal protection claim. The court sustained the demurrer without leave to amend and entered a judgment of dismissal. The court did not rule on the City's pending motion to strike, finding the motion moot in light of the demurrer ruling. Drum timely appeals.

### CONTENTIONS

Drum contends the City's implementation of a residential street sweeping program in selected, rather than all, neighborhoods in Los Angeles violates the equal protection clause of the Fourteenth Amendment to the United States Constitution because it subjects residents in the neighborhoods receiving street sweeping services to a heightened risk of receiving a parking citation. Drum also contends the court erred by

3

finding, as a matter of law, that a plaintiff representing himself in litigation cannot serve as a class representative in a class action lawsuit.

## DISCUSSION

### 1. *Standard of Review*

"We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*) We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)" (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 847-848 (*Las Lomas*).)

### 2. *Drum Has Not Adequately Alleged an Equal Protection Violation*

Drum asserts the City's implementation of a street sweeping program, together with parking restrictions designed to clear the streets during a two hour window each week, denies equal protection of the law to him and other residents of the neighborhoods in which parking restrictions have been imposed. Drum contends residents of the neighborhoods receiving street sweeping services are subject to a heightened risk of receiving a parking citation, while residents in other areas are not at such risk. We reject Drum's equal protection claim because the City's parking restrictions treat all drivers equally, and the City's implementation of a street sweeping program in selected areas of Los Angeles has a rational basis.

#### A. *The City's Parking Restrictions Apply Equally to All Persons*

"The federal equal protection clause (U.S. Const., 14th Amend.) and its California counterpart (Cal. Const., art. I, § 7, subd. (a)) provide that persons who are similarly situated with respect to the legitimate purpose of a law must be treated alike

under the law. (*Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) Equal protection challenges typically involve claims of discrimination against an identifiable class or group of persons." (*Las Lomas, supra*, 177 Cal.App.4th at p. 857.) " 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

According to the second amended complaint, the City imposed parking restrictions prohibiting street parking for two hours each week, during which time the City intends to clean the streets. Drum concedes the City has clearly posted the parking restrictions, and he has not alleged the City enforces the parking restrictions in a selective manner. Instead, Drum contends residents of the neighborhoods in which the City has imposed street-sweeping-related parking restrictions are treated differently than other residents of Los Angeles because the former are "at risk of receiving a citation for parking in front of their residence, while other residents of the City are never in jeopardy of receiving a citation." The complaint fails to allege the threshold element of an equal protection claim: unequal treatment under the law.

"There is always some difference between the two groups which a law treats in an unequal manner since an equal protection claim necessarily asserts that the law in some way distinguishes between the two groups. Thus, an equal protection claim cannot be resolved by simply observing that the members of group A have distinguishing characteristic X while the members of group B lack this characteristic. The 'similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar *with respect to the purpose of the law in question* that some level of scrutiny is required in order to determine whether the distinction is justified." (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714, emphasis added.)

5

Here, the two hour parking restrictions imposed by the City to facilitate its street sweeping program apply to all vehicles parked on the street during the posted hours. The parking restrictions do not distinguish between residents and non-residents. Thus, contrary to Drum's contention, everyone who parks a vehicle on the street during the prohibited two-hour window is equally at risk of receiving a citation. Drum's observation that people who live on streets with parking restrictions may receive parking citations more frequently that residents of other areas of Los Angeles may be true as a practical matter, but it is not the result of any constitutional defect in the parking restriction. Because the parking restriction applies universally (i.e., it does not create any classification), no further equal protection analysis of the parking restriction is required.

B. *The City's Selective Street Cleaning Program Has a Rational Basis*

We next consider whether the City's selective implementation of a street cleaning program, together with parking restrictions designed to clear the streets during the scheduled cleaning hours, violates the equal protection clause.[1]

First, we must determine the appropriate standard of review. Where "a disputed statutory disparity implicates no suspect class or fundamental right, 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881, quoting *People v. Turnage* (2012) 55 Cal.4th 62, 74 (*Turnage*).) Based upon our review of the second amended complaint, we conclude that Drum's equal protection claim is subject to rational basis review because the claim does not implicate any fundamental right, nor does it suggest the City's actions have a disparate impact on any protected class of individuals. Drum appears to concede the point.

---

[1]     Although Drum has not identified any specific ordinance or regulation implementing the City's street cleaning program, we accept as true Drum's allegations that the City has adopted a program to clean residential streets on a weekly basis in some, but not all, residential neighborhoods in Los Angeles.

Nevertheless, Drum argues we must presume there is no rational basis for the City's program. Specifically, Drum urges that "the Second Amended Complaint specifically alleges that 'there is no rational basis for the City to impose the program only in the neighborhoods it has,' " and therefore, "for the purposes of a demurrer, this is true as a matter of law." As already noted, we accept as true all properly pleaded factual allegations in the complaint. But we do not accept as true "contentions, deductions or conclusions of fact or law." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Los Angeles Memorial Coliseum Com. v. Insomniac, Inc.* (2015) 233 Cal.App.4th 803, 819.) The existence of a rational basis underlying the City's street sweeping program is not a fact to be pled and accepted as true; it is a legal issue for our independent consideration.

Accordingly, we analyze whether the City's implementation of a street cleaning program in some, but not all, residential neighborhoods in Los Angeles has a rational basis. Our Supreme Court has recognized that "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' [Citation.] In other words, the legislation survives constitutional scrutiny as long as there is ' "any reasonably conceivable state of facts that could provide a rational basis for the classification." ' [Citation.] This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation.], a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice [citation.]. It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' [Citations.]" (*People v. Turnage, supra,* 55 Cal.4th at pp. 74-75.)

Drum asserts that the City had the burden to present evidence that its street sweeping program has a rational basis. Long-standing case law is to the contrary. "The rational basis test is extremely deferential and does not allow inquiry into the wisdom of government action. (*FCC v. Beach Communications, Inc*. (1993) 508 U.S. 307, 313.)

7

A court must reject an equal protection challenge to government action 'if there is any reasonably conceivable state of facts that could provide a rational basis for the [difference in treatment]. [Citations.]' (*Id*. at p. 313; [citations.].) 'Where there are "plausible reasons" for [the] action, "our inquiry is at an end." [Citation.]' Under the rational basis test, courts must presume the constitutionality of government action if it is plausible that there were legitimate reasons for the action. In other words, the plaintiff must show that the difference in treatment was ' "so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." ' (*Gregory v. Ashcroft* (1991) 501 U.S. 452, 471.) Proving the absence of a rational basis can be an exceedingly difficult task. In some circumstances involving complex discretionary decisions, the burden may be insurmountable." (*Las Lomas, supra,* 177 Cal.App.4th at pp. 858-859.)

Street cleaning is a legitimate governmental function. Our Legislature has recognized that "[s]treetweepers operating throughout our nation and the world remove from streets and roads unnecessary pollutants, contaminants, chemicals, trash, and debris, which provides significant environmental and sanitation benefits . . . . " (Veh. Code, § 40245, subd. (a)(1).) "A major benefit of street sweeping, especially in more urbanized areas with higher areas of paving, is that by capturing pollutants before they are made soluble by rainwater, the need for stormwater treatment practices, which can be very costly when compared to collecting pollutants before they become soluble, may be reduced." (Veh. Code, § 40245, subd. (a)(3).)

The Legislature has authorized municipalities, including the City, to prohibit or restrict parking on streets and highways in order to facilitate street sweeping. (See Veh. Code, § 22507.6.) The Legislature has also recognized that parking restrictions are rationally related to a successful street sweeping program: "Each year, illegally parked private cars, trucks, and service vehicles on local streets and roads disrupt full street sweeping of as many as three parking spaces per illegally parked vehicle, resulting in significant debris, grease, oil, and other pollutants being needlessly washed into the stormwater drains." (Veh. Code, § 40245, subd. (a)(2).) In this case, the City

8

adopted parking restrictions one day each week, for a two hour period, intended to clear the street of parked cars while street sweeping takes place.  We have no difficulty concluding that the City's parking restrictions are rationally related to its street sweeping program.

It is also evident that the City's implementation of a street sweeping program in some, rather than all, residential neighborhoods has a rational basis.  We can conceive of numerous reasons the City may have adopted its current program, not the least of which are budgetary concerns and limited resources.  The City may have chosen to prioritize some areas for street cleaning based upon population density or traffic congestion, both of which may substantially contribute to the amount of debris and chemical residue on the roads.  In addition, because "stormwater drain discharges are the 'primary source of trash' in the waterbodies of the Los Angeles River Watershed, whereby unswept street litter is washed through the storm drain sewers into the Los Angeles River, the Estuary, the beaches at Long Beach, and the Pacific Ocean," see Vehicle Code section § 40245, subd. (a)(6), the City may have targeted its resources in those areas most likely to discharge waste into major storm drains.

In sum, the City's street sweeping program and related parking restrictions are rationally related to the City's goal of maintaining city streets in a safe, healthy and environmentally sound manner.  Because we conclude Drum's second amended complaint fails to state a claim, it is unnecessary for us to consider whether a self-represented litigant may properly serve as the class representative in a class action lawsuit.

## *DISPOSITION*

The judgment is affirmed.  Respondent to receive its costs on appeal.

***NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS***

LAVIN, J.

WE CONCUR:

EDMON, P. J.

ALDRICH, J.

10