Filed 9/9/14  Towers v. Shasta County CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| ROGER TOWERS et al., | C070825 |
| Plaintiffs and Appellants, | (Super. Ct. No. 171355) |
| v. | |
| SHASTA COUNTY et al., | |
| Defendants and Respondents. | |

This federal civil rights action, brought pursuant to 42 U.S.C. section 1983 (Section 1983), against defendants the County of Shasta (County), the Shasta County District Attorney (District Attorney), and Russ Mull, the Director of the Shasta County Resources Management Department (Mull), involves the County's efforts to abate public nuisances and code violations on plaintiffs Roger and Catherine Towers's (Towers or plaintiffs) land and that of their neighbors.  The trial court sustained a demurrer without

1

leave to amend to plaintiffs' first amended complaint, finding the District Attorney immune from liability under Section 1983, and that plaintiffs failed to state equal protection and due process claims against the County and Mull.  We agree with the trial court and affirm the judgment.

FACTS AND PROCEEDINGS

Given the posture of this proceeding, we accept the complaint's well-pleaded factual allegations as true.  (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 495-496.)  Plaintiffs' first amended complaint alleged as follows:

A.     The Property

Plaintiffs purchased the subject property, located on Peter Pan Gulch Road in Shasta County, on July 25, 2007.  The property consists of five parcels covering approximately 150 acres.  Approximately one and one-half acres are located within the City of Anderson.  The remaining 148 acres are located within the County and are at issue here.

B.     The Former Owner's Code Violations

On April 30, 2007, nearly three months before plaintiffs purchased the property, the County Resource Management Department (RMD) sent an abatement letter to plaintiffs' predecessor in interest regarding unauthorized Off-Highway Vehicle (OHV) use on the property, which the County characterized as a grading violation under the Shasta County Code.  Although the April 2007 letter informed the prior owner that a notice of noncompliance would be recorded against the property within 30 days, the County never recorded the notice.

In another abatement letter, dated July 23, 2007--two days before plaintiffs bought the property--the County notified the prior owner that junk and debris located on the

2

property constituted a public nuisance, and that a notice of noncompliance would be recorded against the property. The County, however, did not record any such notice.

### C. Plaintiffs' Actions to Comply with the Prior Abatement Notices

After purchasing the property, plaintiffs' spent approximately $12,000 fencing the property and removing the accumulated junk. By August 2007, the County considered the abatement notices resolved and closed the code enforcement file on plaintiffs' property without taking any further action. Plaintiffs sent a letter to neighboring properties and various County officials detailing the fencing they had installed to stop illegal off-highway vehicle use on the property.

### D. Plaintiffs' 2007 Complaints Against their Neighbors and the County's Enforcement Efforts

After plaintiffs fixed the zoning violations on their property, they began complaining to the County that several of their neighbors' properties contained junk and debris, and illegal buildings or residences. Plaintiffs submitted complaints to the County regarding four of their neighbors: Riggins, Chavez, McBroom, and Fay. Plaintiffs believe the County provided the neighbors with information linking plaintiffs to the complaints, which caused plaintiffs to be subjected to threats and harassment, particularly from the McBrooms.

The County's code enforcement efforts against Chavez were ultimately successful because Chavez removed the junk from his property. Unlike the plaintiffs and Chavez, however, the other three property owners did not remove the junk from their properties.

The County deemed the junk on the Fay property a public nuisance and recorded a notice of noncompliance against the property on October 27, 2007. The County recorded a similar notice of noncompliance against the Riggins property on October 15, 2009. The County's standard notice of noncompliance includes the following language: "No permit or other entitlement for the use of occupancy of this property or any other structure on it,

3

will be issued by Shasta County unless the violation described above is first corrected . . . ."

In September 2010, plaintiffs wrote to defendant Mull to complain that the junk and public nuisances on the Fay, Riggins, and McBroom properties had not yet been abated. Plaintiffs copied the letter to defendant Shasta County District Attorney and to a County supervisor. Mull responded in writing that he had received plaintiffs' letter and had reviewed related documents.

By the time plaintiffs filed their initial complaint on February 2, 2011, the County had not recorded a notice of noncompliance against the McBroom property even though junk and debris remained on site. And, when plaintiffs' filed the first amended complaint on June 13, 2011, junk still remained on the Fay and Riggins properties as well.

Plaintiffs allege County enforcement personnel and the District Attorney had a mandatory duty under Penal Code section 373a and Shasta County Code section 1.12.020, subdivision (A), to abate the junk nuisances on their neighbors' properties.

E.      Plaintiffs' 2008 Application for a Certificate of Compliance

In April 2008, plaintiffs applied to the County for a certificate of compliance to recognize six parcels on the property pursuant to the Subdivision Map Act. (Gov. Code, § 66499.35.) The County has not processed their request.

F.      Plaintiffs' 2009 Grading Violation

At the beginning of June 2009, plaintiffs graded a portion of their property to realign a four-wheel drive access road for agricultural purposes, including managing livestock. On June 16, 2009, the County sent plaintiffs an abatement letter informing them that their recent grading activities violated Shasta County Code section 12.12.040. Prior to receiving the June 2009 abatement letter, plaintiffs were not afforded any notice to discuss the matter with the County nor were they given a hearing. Plaintiffs dispute that their grading activities violated or were subject to the Shasta County Code.

4

The June 2009 abatement letter included the following: "Please also note that a hold will be placed on the issuance of any further permits or sited inspections until the grading violation is cleared." The letter also stated that, "additional fees, the refusal of this office to issue development permits on this parcel for up to two years, or referral to the Shasta County District Attorney's office" could also result if the grading violation was not remedied. According to plaintiffs, the County refused to process their April 2008 request for a certificate of compliance because of the purported grading violation.

Plaintiffs characterize the June 2009 abatement letter as "flagging" the property. Plaintiffs claim the County routinely "flags" properties as a means of coercing property owners to comply with the Shasta County Code, which plaintiffs contend violates the Permit Streamlining Act--specifically Government Code sections 65920 and 65921.

G.     Trial Court Proceedings

On February 2, 2011, plaintiffs filed a petition and complaint against the County seeking to recover for due process and equal protection violations under Section 1983 and for inverse condemnation. The trial court sustained the County's demurrer to the complaint with leave to amend.

Four months later, on June 13, 2011, plaintiffs filed their first amended petition and complaint against the County, Mull, and the District Attorney. The first amended complaint asserted five causes of action, two of which contained multiple counts.

Count 1 of the first cause of action alleged defendants violated Section 1983 and the equal protection clause by failing to enforce the Shasta County Code against their neighbors and to abate the nuisances on their neighbors' properties under Penal Code section 373a. Count 2 of the first cause of action alleged defendants violated Section 1983 and their equal protection rights by sending them the June 2009 abatement letter regarding the grading violation on their property.

Plaintiffs' second cause of action for violating Section 1983 and the due process clause contained three counts: (1) that defendants improperly flagged plaintiffs' property by sending them the June 2009 grading violation abatement letter; (2) that in November 2010 defendants improperly recorded a notice of noncompliance against plaintiffs' property based on the grading violation; and (3) that defendants failed to enforce the Shasta County Code and Penal Code section 373a against their neighbors to abate the public nuisances on their properties.

The third, fourth, and fifth causes of action sought writs of mandate related to the flagging of plaintiffs' property, the certificate of compliance to recognize six parcels on plaintiffs' land, and to abate the public nuisances on the property of plaintiffs' neighbors, respectively.

All defendants demurred to the first cause of action (equal protection), counts 1 and 2, and to the second cause of action (due process), counts 1 and 3. The trial court sustained demurrers without leave to amend as to count 1 of the first cause of action and counts 1 and 3 of the second cause of action; the trial court granted leave to amend as to count 2 of the first cause of action. Plaintiffs declined to further amend their complaint and voluntarily dismissed count 2 of both the first and second causes of action as well as the third, fourth, and fifth causes of action.

On March 19, 2012, the trial court entered an order of final dismissal fully disposing of all causes of action in the first amended complaint. Plaintiffs timely appealed, challenging the court's order sustaining the demurrer as to count 1 of the first cause of action and counts 1 and 3 of the second cause of action.

DISCUSSION

I

*Standard of Review*

"On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law." (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) "We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context." (*Ibid.*) We deem to be true all material facts properly pleaded, and we "also accept as true those facts that may be implied or inferred from those expressly alleged." (*Ibid.*) If no liability exists as a matter of law, we must affirm the judgment sustaining the demurrer. (*Ibid.*)

II

*Section 1983 Immunity*

In sustaining the demurrer, the trial court found, among other things, that the District Attorney was immune from liability under Section 1983 because he acts on behalf of the state rather than the County when investigating and prosecuting crimes such as public nuisances. While not entirely discernible from the opening brief, plaintiffs concede in their reply that the District Attorney indeed constitutes a state actor for purposes of Section 1983 and that the County is not liable for the District Attorney's prosecutorial decision not to institute judicial proceedings under Penal Code section 373a against their neighbors to abate the junk nuisances on their properties. We note that Penal Code section 373a provides in relevant part, "Every person who maintains, permits, or allows a public nuisance to exist upon his or her property or premises . . . is guilty of a misdemeanor . . . and it is hereby made the duty of the district attorney . . . to prosecute

7

all persons guilty of violating this section by continuous prosecutions until the nuisance is abated and removed."

"In California, all criminal prosecutions are conducted in the name of the People of the State of California and by their authority." (*People v. Eubanks* (1996) 14 Cal.4th 580, 588 (*Eubanks*).) " '[T]he prosecution of criminal offenses on behalf of the People is the sole responsibility of the public prosecutor . . . [who] ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek.' " (*Ibid.*) "The district attorney of each county is the public prosecutor, vested with the power to conduct on behalf of the People all prosecutions for public offenses within the county." (*Id.* at p. 589.) "No private citizen, however personally aggrieved, may institute criminal proceedings independently [citation], and the prosecutor's own discretion is not subject to judicial control at the behest of persons other than the accused." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 451 [crime victim "has no personal 'right' or 'interest' which would permit his intervention in the decision to recall [a defendant's] sentence"] (*Dix*).)

As a state actor exercising prosecutorial discretion when determining which, if any, criminal charges to file against individuals such as plaintiffs' neighbors, the District Attorney is immune from liability under Section 1983 by virtue of the Eleventh Amendment and the doctrine of sovereign immunity. (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 829); *Pitts v. County of Kern* (1998) 17 Cal.4th 340, 359-360 [county district attorney acts on behalf of state in investigating and prosecuting crimes and therefore enjoys Eleventh Amendment immunity from Section 1983 liability]; *Imbler v. Pachtman* (1976) 424 U.S. 409, 430-431 [47 L.Ed.2d 128, 143-144] [prosecutors enjoy absolute immunity from Section 1983 suits for their activities in initiating and presenting the state's case, as well as for conduct "intimately associated with the judicial phase of the criminal process"].) The trial court, therefore, properly sustained the demurrer as to

defendant Shasta County District Attorney.  We turn now to the merits of plaintiffs' civil rights claims against the County and Mull.

III

*Code Enforcement Efforts Resulting in Different Outcomes*

A.      Equal Protection

Plaintiffs' first cause of action, count 1, alleges a theory not often seen--that the County and Mull violated Section 1983 and their constitutional rights to equal protection by failing to enforce the Shasta County Code against their neighbors to secure the same level of nuisance abatement as the County achieved from plaintiffs.  The crux of plaintiffs' complaint is not that the County improperly issued the 2007 notices of abatement regarding their property, but that plaintiffs reacted differently than their neighbors to such abatement notices; that is, whereas plaintiffs complied with the notice sent to them by removing the junk from their property, the neighbors (at least some of them) did not.

It is this difference in outcome upon which plaintiffs' equal protection claim rests. According to plaintiffs, they have a right to have the County Code enforced against their neighbors to achieve an identical outcome, otherwise plaintiffs have been denied equal protection of the law.  In other words, plaintiffs contend that, when only some people comply with the law and others do not, a dual system that violates equal protection is created:  one for law abiding citizens and a second for "scofflaws."  We disagree.

"The equal protection clause of [the] Fourteenth Amendment to the United States Constitution declares:  'No state shall . . . deny to any person within its jurisdiction the equal protection of the laws.' " (*People v. Jeha* (2010) 187 Cal.App.4th 1063, 1073.)  It is well settled, however, that "an equal protection violation does not arise whenever officials 'prosecute one and not [another] for the same act.' " (*Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 297 (*Murgia*).)  "[T]he equal protection guarantee simply

9

prohibits prosecuting officials from purposefully and intentionally singling out individuals for disparate treatment on an invidiously discriminatory basis." (*Ibid.*) Thus, " '[t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.' " (*Ibid.*, italics omitted.)

"In *Oyler v. Boles* [(1962) 368 U.S. 448 [7 L.Ed.2d 446]], a defendant who had been convicted and sentenced under a West Virginia habitual criminal statute sought a writ of habeas corpus on the ground that the habitual criminal statute had been discriminatorily enforced against him in violation of the equal protection clause. The defendant rested his contention, however, simply on allegations that the statute under which he had been sentenced had not been applied to a great number of individuals who fit within its terms; he did not allege that he had been intentionally singled out by the prosecuting authorities on an invidiously discriminatory basis.

"In rejecting the defendant's contention that his allegations demonstrated a denial of equal protection, the *Oyler* court stated: '[The] conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore, grounds supporting a finding of a denial of equal protection were not alleged.' (368 U.S. at p. 456 [7 L.Ed.2d at p. 453].)" (*Murgia, supra,* 15 Cal.3d at p. 299.)

Here, the first amended complaint contains no allegations that the County or Mull intentionally or purposefully discriminated against plaintiffs by issuing the notices of abatement for their property. Nor could plaintiffs allege such conduct since the County issued the notices to the former owner *before* plaintiffs ever purchased the property.

10

The complaint instead alleges that the County sent their predecessor in interest two abatement letters regarding illegal OHV use and junk on the property, both stating that the County intended to record a notice of noncompliance against the property if the code violations were not abated. Shortly after plaintiffs bought the property, they fenced the land and removed the junk. The County considered the code violations sufficiently resolved and closed the code enforcement files without taking any further action. The County never recorded a notice of noncompliance for either the OHV use or the junk.

The complaint further alleges that after receiving plaintiffs' complaints about four of their neighbors regarding a similar junk issue, the County undertook various steps to enforce the County Code against the neighbors. As a result of the County's enforcement efforts, Chavez cleaned up his property. When Riggins and Fay failed to remove the junk from their respective properties, the County recorded notices of noncompliance-- something the County did not do to plaintiffs. The County did not record a notice of noncompliance against the McBroom property even though junk remained onsite.

These allegations establish nothing more than lax enforcement in abating the neighbors' junkyard nuisances. An alleged " 'unequal' treatment which may result from simple laxity of enforcement or the nonarbitrary selective enforcement of a statute has never been considered a denial of equal protection." (*Murgia, supra,* 15 Cal.3d at p. 296.) Indeed, "courts have uniformly recognized that administrative officials enjoy broad discretion in determining the specific circumstances under which established punitive sanctions should be invoked." (*Ibid.*)

The facts as alleged show the County engaged in varying degrees of enforcement against the five property owners referenced in the complaint. Two property owners complied with the abatement letters, two had notices of noncompliance recorded against their properties when they did not comply, and one did not receive a notice of noncompliance notwithstanding the junk present on his property. Such allegations, even if assumed to be true, are insufficient to show the type of intentional or purposeful

11

discrimination required to establish an equal protection violation. (*Murgia, supra,* 15 Cal.3d 290 [United Farm Workers Union defendants, who were charged with several misdemeanors, were entitled to discovery on their defense that they were prosecuted solely because they were members of that particular union].)

Plaintiffs' reliance on *Baluyut v. Superior Court* (1996) 12 Cal.4th 826 (*Baluyut*), is misplaced as that case is not to the contrary. *Baluyut* makes clear that a plaintiff must allege more than mere lax enforcement of a statute or administrative provision to state a valid equal protection claim. (*Id.* at p. 832.) Like *Murgia*, *Baluyut* emphasizes that equal protection is denied only where persons are singled out for a prosecution that is deliberately based on an unjustifiable standard such as race, religion or some other arbitrary classification. (*Ibid.*) In other words, the unequal treatment must be the product of intentional or purposeful discrimination. (*Ibid.*) Plaintiffs make no such allegations regarding the 2007 abatement notices with which they complied.

*Baluyut*, moreover, neither hinted nor held that an individual's equal protection rights are violated whenever a governmental agency or municipality, through code enforcement efforts, does not achieve the same result against all known violators. Extending the equal protection clause in such a manner essentially strips the prosecuting attorney of any and all discretion to determine "whom to charge, what charges to file and pursue, and what punishment to seek." (*Eubanks, supra,* 14 Cal.4th at p. 588.) Carrying plaintiffs' argument to its logical conclusion means the prosecuting attorney would have no discretion at all when determining how to initiate and resolve cases. Under plaintiffs' theory, all cases would have to be resolved identically in order to avoid violating the equal protection rights of some violators. Put differently, the prosecuting attorney could not bring a criminal complaint against anyone, unless he brought a criminal complaint which achieved the same result against everyone violating the law in the same manner. That is not the law.

12

Furthermore, nothing in either Penal Code section 373a or Shasta County Code sections 1.12.020 and 1.12.030 alter that conclusion. While it is true these provisions contain some mandatory sounding language, they do not create an obligation for the County to abate public nuisances on adjoining landowners' properties equally.

As set forth above, Penal Code section 373a provides in relevant part, "[e]very person who maintains, permits, or allows a public nuisance to exist upon his or her property or premises . . . is guilty of a misdemeanor . . . and it is hereby made the duty of the district attorney . . . to prosecute all persons guilty of violating this section by continuous prosecutions until the nuisance is abated and removed." By its plain language, Penal Code section 373a does not empower the County to file charges against anyone to abate nuisances that may exist on their properties. Instead, the statute simply identifies the district attorney as the party who may abate public nuisances under the Penal Code.

Plaintiffs, however, concede that the County is not liable for the District Attorney's discretionary decision to not prosecute plaintiffs' neighbors under Penal Code section 373a. And, as previously noted, in exercising his prosecutorial discretion, the District Attorney is immune from Section 1983 liability. (*Pitts, supra,* 17 Cal.4th at p. 359-360; *Dix, supra,* 53 Cal.3d at p. 451.) Thus, Penal Code section 373a does not give rise to a mandatory duty on the County's part to abate any purported public nuisances on the neighbors' properties.

The same is true for Shasta County Code sections 1.12.020 and 1.12.030. Shasta County Code section 1.12.020 states, "[e]very person designated as an enforcing officer for any provision of this code shall, as of the effective date of the designation, commence enforcement of those matters entrusted to the officer's administration." Shasta County Code section 1.12.030 provides, "[e]very enforcing officer may use administrative processes such as notices of noncompliance, warning letters, stop orders, or cease and desist orders in lieu of or prior to enforcing any provision of this code if the officer

13

determines that the process may result in compliance with this code at less expense to the county."

Plaintiffs concede that an enforcing officer under Shasta County Code section 1.12.030 has discretion to choose from among several enforcement alternatives when handling a code violation. Plaintiffs readily admit that "the manner of enforcement" under section 1.12.030 "includes optional administrative procedures to effect compliance."

To avoid the obvious import of this language, however, plaintiffs argue that continued reliance on such optional administrative procedures is irrational where violators have not complied for a certain period of time. In plaintiffs' view, at some point the enforcing officer ceases to enjoy enforcement discretion and the obligation to abate a public nuisance becomes mandatory. We refuse to read such a requirement into the ordinance where no such requirement expressly exists. (*Creason v. Dept. of Health Services* (1998) 18 Cal.4th 623, 631 ["Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts"].)

Given the allegations in the complaint, plaintiffs failed to state a cause of action for violation of the equal protection clause. Neither the County nor Mull had a mandatory duty to achieve the same nuisance abatement result against the neighbors as the County achieved voluntarily from plaintiffs. The trial court, therefore, properly sustained the demurrer without leave to amend.

B.    Substantive Due Process

Count three of plaintiffs' second cause of action alleges the same conduct described above--the County's varying degrees of success in abating nuisances on plaintiffs' property and on their neighbors' properties--violated their rights to substantive due process. Again, we disagree.

14

To state a substantive due process claim, plaintiffs must show as a threshold matter that a state actor deprived them of a constitutionally protected life, liberty or property interest. (*Shanks v. Dressel* (9th Cir. 2008) 540 F.3d 1082, 1087 (*Shanks*).) Plaintiffs assert they have a protected property interest in the enforcement of the County Code against adjoining property owners to the same level as they complied with the zoning code. They base this alleged property interest on the County's general police power to enforce its zoning ordinance to maintain the character of an area as established by comprehensive zoning plans. We conclude, however, that plaintiffs' "failure to enforce" the Code to achieve the same result allegations are insufficient to establish the requisite threshold.

Several federal cases have rejected a theory similar to the one advanced by plaintiffs here. For example, in *Gagliardi v. Village of Pawling* (2d Cir. 1994) 18 F.3d 188, 189 (*Gagliardi*), the Second Circuit affirmed the dismissal of the plaintiffs' due process claim where the plaintiffs alleged a municipality failed to enforce the zoning laws against their neighbors. The Second Circuit reasoned that "[n]o due process right is implicated here because the [plaintiffs] have no right to demand that the Municipal Defendants enforce the zoning laws." (*Id.* at p. 192.)

Similarly, in *Shanks*, the Ninth Circuit rejected a substantive due process challenge based on a municipality's and its employees' failure to enforce the zoning code against a developer. (*Shanks, supra,* 540 F.3d at p. 1084.) There, the municipality issued a building permit to convert a private home into a student residence in an established historic district within the plaintiffs' neighborhood without first requiring the developer to obtain a certificate of appropriateness and administrative special permit as required by the zoning code. (*Id.* pp. 1084-1085.)

Both *Gagliardi* and *Shanks* emphasized the general rule that a state or governmental agency's failure to protect an individual from " 'harms inflicted by persons not acting under color of law' will not ordinarily give rise to § 1983 liability." (*Shanks,*

15

*supra,* 540 F.3d at pp. 1087-1088; *Gagliardi, supra,* 18 F.3d at p. 192 [the Due Process Clause does not guarantee security from the acts of others].)  This is because "[t]he Constitution generally does not require the state to 'protect the life, liberty, and property of its citizens against invasion by private actors.' " (*Shanks, supra,* 540 F.3d at p. 1087; *DeShaney v. Winnebago County Dep't of Soc. Serv.* (1989) 489 U.S. 189, 195 [103 L.Ed.2d 249] ["The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security"]; see also *Garcia v. Superior Court* (1990) 50 Cal.3d 728, 739 ["[t]he State's failure to prevent harm inflicted by a private actor does not give rise to a cause of action under section 1983"].)

We find these cases' persuasive authority to support our conclusion that plaintiffs do not possess any protected property interest in having the County or Mull enforce the County Code against their neighbors to obtain the same level of compliance as voluntarily supplied by plaintiffs, especially since enforcement under Shasta County Code section 1.12.030 is discretionary.  (*Gagliardi, supra*, 18 F.3d at p. 192 [substantive due process does not generally require government to enforce laws against private wrongdoers]; *Shanks, supra,* 540 F.3d at pp. 1087-1088 [municipality had no duty to safeguard plaintiffs from developer's code violations].)  Plaintiffs' simply have no right to demand that the County or Mull enforce the zoning code to achieve the same result against their neighbors.  (*Dix, supra,* 53 Cal.3d at p. 451 [a private citizen, even if personally aggrieved, has no right or interest in controlling prosecutor's discretion]; see also *Kathleen R. v. City of Livermore* (2001) 87 Cal.App.4th 684, 698-699 [plaintiff failed to state a substantive due process claim based on a library's failure to protect her son from harmful material placed on the internet by private persons, which he accessed using the library's public computers].)

The first amended complaint, moreover, contains no allegations that the neighbors themselves were acting under color of law or that they were conspiring with County

16

officials to avoid the County ordinances. Under these circumstances, the County had no independent constitutional duty to protect plaintiffs from the negative consequences--economic, aesthetic, or otherwise--of the neighbors' property and the junk that may have been present there. (*Shanks, supra,* 540 F.3d at p. 1088; *Gagliardi, supra,* 18 F.3d at p. 192.)

The trial court properly sustained the demurrer to count three of plaintiffs' second cause of action.

IV

*"Flagging" the Property after Alleged Grading Violation*

Count 1 of plaintiffs' second cause of action alleges the County violated their substantive and procedural due process rights by sending them a certified letter in June 2009 notifying them that the County believed a grading violation had occurred on the property and informing them that a hold would be placed on the issuance of any further permits or site inspections until the grading violation was cleared. We conclude the June 2009 letter did not violate plaintiffs' rights to due process.

A.    Substantive Due Process

"Typical land use disputes involving alleged procedural irregularities, violations of state law, and unfairness ordinarily do not implicate substantive due process." (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 856 (*Las Lomas*); see also *Stubblefield Construction Co. v. City of San Bernardino* (1995) 32 Cal.App.4th 687, 709-710 [recognizing development project rejections and refusals to issue building permits generally do not implicate substantive due process] (*Stubblefield*).) Rather, a substantive due process violation requires more than " 'ordinary government error.' " (*Las Lomas, supra,* 177 Cal.App.4th at p. 856.) Such a violation "requires some form of outrageous or egregious conduct constituting 'a true abuse of power.' " (*Ibid.*; *Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1032 ["the arbitrary government

17

conduct that triggers a substantive due process violation is not ordinary government error but conduct that is in some sense outrageous or egregious"] (*Galland*).)

To state a viable substantive due process claim, then, plaintiffs must show some outrageous conduct by the County or Mull, rising to the level of a true abuse of power, that deprived them of a constitutionally protected life, liberty or property interest. (*Shanks, supra,* 540 F.3d at p. 1087.) Plaintiffs' reliance on the "deliberate flouting of the law" language from *Galland*, does not fundamentally change the applicable inquiry. (*Galland, supra,* 24 Cal.4th at p. 1034.) While our Supreme Court cited with approval language stating that "a substantial infringement of state law prompted by personal or group animus, or *a deliberate flouting of the law that trammels significant personal or property rights*, qualifies for relief under § 1983," (*ibid.* [emphasis in original]), the court later recognized that "[b]ecause substantive due process does not encompass 'negligently inflicted harm' [citation], but rather 'only the most egregious official conduct,' wherein government officials are ' " ' "[abusing their] power, or employing it as an instrument of oppression" ' " ' [citation], it cannot be said to encompass governmental mistakes and bureaucratic errors that are something less than an abuse of power." (*Ibid.*)

Regardless of whether the standard is articulated as outrageous or egregious official conduct or as a deliberate flouting of the law, plaintiffs must demonstrate that the conduct complained of amounted to an abuse of power. (*Galland, supra,* 24 Cal.4th at p. 1034.) Based on the allegations of the first amended complaint, plaintiffs have not, and cannot, satisfy this heavy burden.

Plaintiffs identify their right to a certificate of compliance as the property interest supporting their due process challenge. They also claim they were denied a liberty interest to "earn [their] livelihood by any lawful calling" because the County's letter effectively denied plaintiffs the ability to obtain any permits on their property.

The allegations surrounding the certificate of compliance and the denial of the right to seek a permit are as follows: In April 2008, plaintiffs requested the County issue

18

them a certificate of compliance recognizing six parcels on their approximately 148 acres within the County. At the same time they applied to the County for the certificate of compliance, they also applied for a similar certificate from the City of Anderson, which, unlike the County, promptly processed their request. Plaintiffs allege the County was required to issue them the nondiscretionary certificate of compliance under state law.

In early June 2009, plaintiffs conducted grading activity on their property. As a result of the grading, the County issued a letter on June 16, 2009, purportedly "flagging" plaintiffs' property. The June 2009 letter states, "a hold will be put on the issuance of any further permits or site inspection until the grading violation is cleared," and that "additional fees, the refusal of this office to issue development permits on this parcel for up to two years, or referral to the Shasta County District Attorney's office" were also possibilities. Plaintiffs disputed that their activities required a grading permit or that a grading violation had occurred.

On appeal, plaintiffs assert that the County refused to act on their request to issue the certificate of compliance based on the "flagging" letter. State law, they argue, required the County to issue the certificate. Plaintiffs cite the California Permit Streamlining Act, and in particular Government Code section 65920, for the proposition that the County had a duty to issue the certificate within a certain period of time. The time limits of the Permit Streamlining Act, however, do not apply to certificates of compliances. (*Findleton v. Board of Supervisors* (1993) 12 Cal.App.4th 709, 714 [Permit Streamlining Act deadlines are irrelevant to requests for certificates of compliance] (*Findleton*).)

Although not specifically cited in the first amended complaint nor in plaintiffs' appellate briefs, certain provisions of the Subdivision Map Act make issuing certificates of compliance a ministerial rather than discretionary act. (See Gov. Code, § 66499.35.) Under Government Code section 66499.35, a real property owner may request, and a local agency shall determine, whether real property complies with the Subdivision Map

19

Act. (*Ibid.*)  The agency must issue a certificate of compliance if it finds the property complies, or it must issue a conditional certificate of compliance if it finds the property does not.  (*Ibid.*; see also *Findleton, supra,* 12 Cal.App.4th at p. 714 [issuance of certificate of compliance is a ministerial rather than discretionary act].)  It appears, then, that the County had a nondiscretionary duty to issue plaintiffs either an unconditional or conditional certificate of compliance in response to their request.

That the County had such a duty, however, does not mean plaintiffs have established a substantive due process violation.  It is clear the alleged June 2009 grading violation did not occur until over a year *after* plaintiffs requested the certificate of compliance from the County in April 2008.  This timeline illustrates that the County's failure to process the certificate of compliance stemmed from its own delay rather than any animus towards plaintiffs based on the purported grading violation or "flagging" letter.  The allegations regarding the City of Anderson serve only to highlight the County's delayed processing abilities.

While the County may have been required under the Subdivision Map Act to issue a certificate of compliance, or, at a minimum, a conditional certificate of compliance (Gov. Code, § 66499.35), we cannot say its failure to do so in an expeditious manner rises to the level of egregious conduct as required for a substantive due process violation. (*Findleton, supra,* 12 Cal.App.4th at p. 711 [after eight months, county still had not finally acted upon application for a certificate of compliance].)  Instead, the failure to issue the certificate arguably represents a violation of state law.  Such a violation does not implicate substantive due process, however.  (*Los Lomas, supra,* 177 Cal.App.4th at p. 856; *Stubblefield, supra,* 32 Cal.App.4th at pp. 709-710 & fn. 15 ["Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation"].)  "The doctrine of substantive due process 'does not protect individuals from all [governmental] actions that

20

infringe liberty or injure property in violation of some law.' " (*Las Lomas* at p. 856; *Stubblefield* at p. 709.)

The allegations against Mull, moreover, do not establish egregious conduct rising to the level of an abuse of discretion. Plaintiffs' factual allegations pertaining to Mull can be summed up as follows: plaintiffs sent Mull a letter in September 2010--a year after plaintiffs received the June 2009 "flagging" letter--detailing their complaints against their neighbors regarding the junk issue. Mull acknowledged that he received plaintiffs' letter and that he reviewed related documents. These allegations, even if true, fall far short of outrageous or egregious conduct. (*Stubblefield, supra,* 32 Cal.App.4th at pp. 710-711 [councilmember who vigorously opposed plaintiff's development project did not engage in outrageous or irrational conduct].)

And besides the certificate of compliance, plaintiffs do not allege that they ever sought or that they were denied a permit to build anything on their property. While they allege they *contemplated* seeking a building permit for a house or a permit for a gravel processing facility, there are no allegations that they actually did so or that the County denied such applications. Without more, plaintiffs cannot establish that they were denied the right to seek further permits from the County. This is true even though the June 2009 letter stated a hold would be placed on the property. As plaintiffs' complaint elsewhere points out, the County said it would record a notice of noncompliance against the property concerning junk and OHV use, but such notices were never recorded.

The allegations of the complaint do not state a cause of action for a violation of substantive due process based on the certificate of compliance and the June 2009 letter regarding the alleged grading violation. The trial court, therefore, properly sustained the demurrer to count 1 of plaintiffs' second cause of action.

B.    Procedural Due Process

Reduced to its essence, plaintiffs contend the County deprived them of their rights to procedural due process by sending them the June 2009 letter regarding the grading violation without first holding a hearing.  The procedural component of the Fourteenth Amendment's due process clause "ensures a fair adjudicatory process before a person is deprived of life, liberty, or property."  (*Las Lomas, supra,* 177 Cal.App.4th at p. 852.)

According to plaintiffs, they were entitled to the hearing procedures specified in Government Code section 53069.4 and Shasta County Code section 1.12.050, subdivision (B)(5).  We conclude the June 2009 letter did not deprive plaintiffs of any procedural due process rights under either of those provisions.

Government Code section 53069.4 codifies a local agency's right to enact administrative fines and penalties for violations of its local ordinances.  (Gov. Code, § 53069.4, subd. (a)(1).)  Under the statute, a local agency "shall set forth by ordinance the administrative procedures that shall govern the imposition, enforcement, collection, and administrative review by the local agency of those administrative fines or penalties."  (*Ibid.*)  The statute contemplates monetary fines and penalties.  (Gov. Code, § 53069.4, subd. (a)(1) ["Where the violation would otherwise be an infraction, the administrative fine or penalty shall not exceed the maximum fine or penalty amounts for infractions set forth in subdivision (b) of Section 25132 and subdivision (b) of Section 36900); subd. (d) ["If the fine or penalty has not been deposited and the decision of the court is against the contestant, the local agency may proceed to collect the penalty pursuant to the procedures set forth in its ordinance"].)

Shasta County Code section 1.12.050 is the County's ordinance regarding civil penalties and administrative fines.  The ordinance provides that "[a]ny person who violates any regulatory or prohibitory provision of this code is liable for a civil penalty for each offense which shall not exceed the amount that could be imposed as a fine in a

22

criminal prosecution for that offense if it was determined to be a misdemeanor." (Shasta Code Code, § 1.12.050, subd. (A).) Under subdivision (B)(5), "[a]ny party who has been fined or penalized pursuant to this section may request administrative review of the decision imposing the fine or penalty," (Shasta Code Code, § 1.12.050, subd. (B)(5).)

In this case, plaintiffs' first amended complaint is devoid of any allegations that the County or Mull imposed either an administrative fine or penalty on them as a result of the alleged grading violation. Allegations regarding the content of the June 2009 letter also do not show that any such monetary measures were imposed on plaintiffs. The procedures afforded by Government Code section 53099.4 and subdivision (B)(5) of the Shasta County Code section 1.12.050 to contest monetary fines and penalties therefore do not apply. As plaintiffs were not, as a matter of law, entitled to those procedures, they cannot state a cause of action for a violation of their procedural due process rights based on the County's and Mull's alleged failure to comply with those provisions.

Plaintiffs, moreover, acknowledge that the County has the right to issue stop work orders whenever it reasonably believes there has been a violation of its code. As noted above, Shasta County Code section 1.12.030, subdivision (A), authorizes an enforcing officer to use "administrative processes such as notices of noncompliance, warning letters, stop orders, or cease and desist orders" prior to enforcing the code. Noticeably absent from section 1.12.030 is any mention of a mandated hearing before an enforcing officer may utilize the above administrative processes. Nor is there anything in the code provisions plaintiffs cite that says the County may not place holds on properties where the County has determined a code violation has occurred. Under these circumstances, we cannot say plaintiffs were deprived of any procedural due process rights when the County sent them the June 2009 letter about the grading violation.

23

The final order of dismissal is affirmed.  Defendants are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                                               _____HULL_____, J.


We concur:


_____BLEASE_____, Acting P. J.


_____MAURO_____, J.