Filed 6/6/24  City of Redondo Beach v. 9300 Wilshire CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CITY OF REDONDO BEACH, | B325839 |
| Cross-defendant and Appellant, | (Los Angeles County Super. Ct. No. 20STCP03193) |
| v. | |
| 9300 WILSHIRE, LLC, et al., | |
| Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge.  Affirmed.

Michael W. Webb, Cheryl Yeun Shin Park, Office of the City Attorney, City of Redondo Beach; Mintz Levin Cohn Ferris, Glovsky and Popeo, Jonathan Welner, Antony D. Nash and Nada I. Shamonki,  for Cross-defendant and Appellant.

Rutan & Tucker, Douglas J. Dennington, Ajit Singh Thind, Jayson Parsons for Respondents 9300 WILSHIRE.

## INTRODUCTION

This case involves the site of a power plant in the City of Redondo Beach (the City). Respondents have been the owners of the power plant and its real property since 2020; we will refer to them as Owners.[1] In a writ petition proceeding, Owners filed a cross-complaint against the City alleging that the City's zoning of the property in 2010, and subsequent refusals to re-zone the property in a way that would benefit Owners, constituted a taking by depriving Owners of economically viable uses of the property and violated Owners' substantive due process rights. The City filed a special motion to strike under the anti-SLAPP statute, Code of Civil Procedure section 425.16,[2] asserting that because Owners alleged the City's zoning decisions were based on a decades-long scheme to deprive Owners and their predecessor of any economically viable use of the property, and the statements evidencing that motive were protected activity under section 425.16, Owners' claims "arise from" that protected activity.

The trial court denied the City's motion at the first step of the anti-SLAPP analysis, and we affirm. Owners' claims arise from the zoning decisions themselves, which are not protected

---

[1]    Owners consist of 9300 Wilshire, LLC; 1112 Investment Company, LLC; Ed Flores, LLC; 9300 Wilshire Fee, LLC; David Dromy; 1650 Veteran, LLC; Outdoor Billboard, LLC; BH Karka, LLC; 5th Street Investment Company, LLC; 505 Investment Company, LLC; SLH Fund, LLC; and Peak Alcott, LLC.

[2]    All further undesignated statutory references are to the Code of Civil Procedure. "SLAPP" stands for "strategic lawsuits against public participation." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.)

activity; the claims do not arise from the statements alleged as evidence of the City's motives in making those zoning decisions.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. First amended cross-complaint

In Owners' first amended cross-complaint (FACC), the pleading relevant to this appeal, Owners alleged they owned the power plant and the real property surrounding it (the property). They asserted a "decades-long effort" by the City to "zone out of existence any economically viable alternative use" of the property.

Owners described a long history of the property and the power plant, including its believed origins in about 1897 as a generator site, and its subsequent phases of development as a power station. The FACC describes a 1998 memorandum of understanding between the City and the then-owner of the property, AES Corp., which stated an intention to downsize the power plant and develop the remainder of the property "to commercial and other uses." The FACC alleges that AES performed certain parts of the memorandum, such as removing smokestacks. In March 2002, the City Council approved a new plan for the area that "called for economically viable alternative uses of the [property] upon the downsizing (or closure) of the Power Plant," but the City Council repealed the plan a few months later in June 2002. In 2004, community activists authored a document calling for conversion of the property to park space; this proposal was not approved.

In 2008, a local political group, Building a Better Redondo, authored "Measure DD" to change the City charter so that any "major change" in land use—including any amendment to the coastal zoning ordinance—would require approval of the voters.

3

The property at issue is within the coastal zone. Measure DD was approved by Redondo Beach voters in the November 2008 election.

In 2010, City voters approved Measure G, which changed the property's land use designation from "Industrial" to "Generating Plant"—a new land use designation with no zoning provisions. Measure G allowed the property to be "converted to parks, open space, and recreational facilities if the site is acquired for such purposes in the future."

Meanwhile, the California State Water Resources Control Board (Board) adopted a new policy calling for the termination of power plant operations that use ocean water for cooling. This policy required the power plant to either modernize to eliminate the use of ocean water for cooling or terminate operations by December 31, 2020.

In 2015, AES attempted to rezone the property. Because major land use changes were required to be submitted to the electorate for approval after the passage of Measure DD, AES sponsored an initiative, Measure B, to allow the property to be zoned for 600 residential dwelling units, 85,000 square feet of commercial space, 250 hotel rooms, and 10 acres of open space. Measure B was defeated in a March 2015 special election.

In the FACC Owners alleged, "Through the initiative, referendum and City Council measures alleged hereinabove, the City has successfully eliminated any potential economically viable redevelopment of the [property] upon the Power Plant's closure. The electorate's refusal to approve the relatively modest alternative re-use of the [property] through Measure B demonstrates the City's insistence that the property be converted to parklands for the enjoyment of the public upon the closure of

4

the Power Plant." Owners noted that the City's mayor told a local news organization that parks and open space were the only permitted uses of the property.

The Board approved an extension of power plant operations at the property through 2023. The City first opposed the extension, then filed the writ petition that initiated this case challenging the legality of the Board's extension. Owners then cross-complained against the City. In the FACC, Owners allege that they "did not acquire [the property] with the intent of converting it to open space," and "[o]nce the Power Plant is required to close the site will have no economically viable use under the existing zoning, and the City continues to demonstrate its unwillingness to rezone the [property] to allow it to be redeveloped." Owners alleged that even as the City was updating its housing element to comply with state law, it refused to designate any portion of the property as a potential site for new housing.

Owners asserted four causes of action relevant to this appeal.[3] In two causes of action for inverse condemnation— regulatory taking, Owners alleged that by taking their private property without just compensation the City violated their rights under the Fifth Amendment of the United States Constitution and Article 1, section 19 of the California Constitution. They asserted that the "City's failure and refusal to zone the Property to allow any economically viable reuse of the Power Plant site has

---

[3] Owners asserted a fifth cause of action alleging a violation of their equal protection rights. The trial court sustained the City's demurrer to this cause of action, so it was not addressed in the court's ruling on the anti-SLAPP motion and is not relevant to this appeal.

5

dramatically interfered with the distinct, investment-backed expectations of [Owners and their] predecessors-in-interest, effecting a taking of private property for public use without just compensation." They continued, "By effectively downzoning the alternative uses of the [property] to 'open space,' and refusing to restore the zoning to allow another use, even upon the legally required closure of the Power Plant, [the City has] eliminated all economically viable use of [the property. The City's] actions constitute a per se categorical taking requiring the payment of just compensation." Owners also alleged a cause of action for declaratory relief, requesting a declaratory judgment "confirming the existence of a taking."

In a cause of action for denial of due process – spot zoning, Owners alleged that "[b]y redesignating the Power Plant site as 'Generating Plant,' removing any alternative available re-use of the site other than 'open space' and 'parklands,' applying such designation only to the Power Plant site, and failing and refusing to rezone the Power Plant site to allow an economically viable use of the site upon the closure of the plant[, the City has] treated the Power Plant site materially differently from every other property in the City, without any rational basis for doing so." Owners alleged these "wholly arbitrary and capricious" actions violated their substantive due process rights under the United States Constitution pursuant to 42 U.S.C. section 1983.

## B. Anti-SLAPP motion

### 1. *Motion*

The City filed a special motion to strike under section 425.16, the anti-SLAPP statute. "Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section

6

425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) When "claims are stricken from the pleadings for lack of merit, [the plaintiff] may no longer seek to impose liability on defendants for having engaged in these protected acts." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1019 (*Bonni*).)

Section 425.16, subdivision (e) describes four categories of protected activities "in furtherance of a person's right of petition or free speech": "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

The City moved to strike the entire FACC, asserting that all claims in the FACC arise from protected speech. It argued that the "FACC alleges five types of protected speech": (1) community advocacy opposing continued operation of the power plant, (2) the City's opposition to the Board's extensions of the power plant closure deadline, (3) the City's filing of the writ petition against the Board, (4) statements by the City about its desires for future uses of the property, and (5) the mayor's

7

statement to a local news organization.  The City argued that each of the Owners' causes of action arise from these five types of protected speech, and therefore the City met its first-step burden.

Turning to the second step of the anti-SLAPP analysis, the City argued that Owners could not meet their burden of demonstrating a probability of success on the merits.  The City argued that Owners lacked standing because they purchased the property in 2020 and failed to allege any connection to AES, which owned the property during most of the events alleged in the FACC.  The City also asserted that declining to adopt new zoning desired by a landowner does not constitute a taking.  The City noted that the current zoning did allow for economically beneficial uses, including public utility facilities, recreational facilities, and the construction and operation of a new power plant.  The City further asserted that Owners' claims were barred by the statute of limitations because the various land use regulations at issue were enacted more than five years before the initial cross-complaint was filed.

2.    *Opposition*

In their opposition to the special motion to strike, Owners argued that the anti-SLAPP statute did not apply.  Owners asserted that their claims arise from the City's *actions* regarding the property—not any communications alleged in the FACC as evidence of the City's motives in taking those actions.  They noted that Measure G, passed in 2010, "eliminated the economically viable re-use" of the property, and Measure B, sponsored by former owner AES, was defeated in 2015.  Owners asserted that these actions by the City constituted the takings and due process violation alleged in the FACC.  The causes of action did not "arise from" any of the protected speech the City focused on in its

8

motion, such as the City's writ petition against the Board or statements by community activists and City officials.

Owners also asserted that their claims could meet the second step of the anti-SLAPP analysis. They noted that the trial court had overruled the City's demurrer to the FACC, in which the City had asserted many of the same arguments. Owners argued that their claims would only accrue or ripen upon cessation of power plant operations, and therefore their claims were not time-barred. Owners further asserted that they could prove a taking through the total deprivation of beneficial use and interference with investment-backed expectations. They also argued they had sufficiently alleged the due process cause of action and there was a "legitimate question as to whether the City behaved in a constitutionally arbitrary fashion."

3.　*Reply*

The City's reply asserted that the FACC was "littered throughout with allegations based on protected speech and activity, none of which constitute a taking. These allegations must be stricken from the FACC.[ ] Without these allegations, there is virtually nothing left in the FACC. [Owners'] claim is reduced to the following: (1) the City properly adopted a zoning ordinance in 2010 designating the AES Property as a 'Generating Plant Zone'. . .; (2) AES continued to operate the Plant at the Site for 12 more years; (3) AES voluntarily terminated its application to the California Energy Commission for a new power plant . . .; (4) [Owners] recently purchased the property and have made no effort to apply for a new power plant . . . ; and (5) [Owners] allege it constitutes a 'taking' for the City to keep the zoning the same as it has been for the last 12 years." The City argued that this was not a legitimate inverse condemnation lawsuit; "it is an

9

attempt to get the Court to somehow grant [Owners] a windfall by forcing the City to change its longstanding zoning of the Property." It continued, "Since maintaining the same zoning for many years is not, by itself, sufficient to allege a taking, [Owners] dress up their claim with additional allegations based entirely on the City's protected speech and activity."

The City added, "At a minimum, the court should strike the allegations of protected speech and activity from the FACC." With its reply, the City filed a proposed order stating that the entire FACC was stricken, or in the alternative, certain parts of the FACC were stricken. The proposed order included as an attachment a copy of the FACC with certain allegations crossed out, such as the mayor's statement to the local news and an allegation about the City's "unwillingness" to allow redevelopment of the property. The City also reiterated its second-step arguments that Owners could not establish a probability of success on their claims.

4. *Hearing and ruling*

At the hearing on the special motion to strike, counsel for the City noted that *Baral, supra*, 1 Cal.5th 376 discusses mixed causes of action that include protected and non-protected activity, and allows the court to strike allegations involving protected activity even when entire causes of action are not stricken. The court responded, "[T]he problem is you didn't get to that until your reply. It's not the relief that you asked for in the motion." The court pointed out that in the notice of motion, the City only asked the court to strike each of Owners' causes of action, not specific allegations. Owners' counsel argued that the claims did not arise from protected activity at all, because statements alleged in the FACC "provide color" but were not necessary to

10

succeed on the causes of action.  The court took the matter under submission.

The court denied the City's motion in a written ruling.  The court found the City had not met its burden on the first step of the anti-SLAPP analysis, because it did not demonstrate that Owners' claims arise from protected activity. Quoting *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1064 (*Park*), the court noted the need "to respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim."  The court stated that Owners' "takings claims are based on the City's failure to zone the property for economically viable use without paying [Owners] just compensation.  The protected activities cited by the City are merely background information and evidence of the alleged taking."

Turning to the City's claim that certain allegations in the FACC should be stricken, the court stated, "The City did not request this relief in its moving papers.  Instead, the City argued that all causes of action in the cross-complaint are based on protected activity and must be stricken.  The Court will not grant relief requested for the first time in reply."  The court added that this case did not fit the analysis of *Baral*, because that case addressed mixed causes of action that arise from both protected and non-protected activity, which "is not the situation here."

The City timely appealed the court's order.

## DISCUSSION

On appeal, the City contends the trial court erred in holding that Owners' claims do not arise from protected activity. The City further asserts the trial court erred in refusing to strike

11

specific allegations from the complaint under the reasoning of *Baral*. Upon de novo review, we find no error in the court's holding that the City did not meet its burden to show that any parts of Owners' claims arise from protected activity. Because we find the City did not meet its first-step burden, we do not reach the City's remaining arguments about whether the Owners met their second-step burden regarding a probability of success.

## A. Legal standards

Under section 425.16, "[a] cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788, citing § 425.16, subd. (b)(1).)

In the first step of the anti-SLAPP analysis, the court determines whether the plaintiff's claims arise from protected activity. (*Bonni, supra*, 11 Cal.5th at p. 1009.) At this stage, the "defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Ibid*.) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra*, 2 Cal.5th at p. 1062.) "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id*. at p. 1063; see also *Bonni, supra*, 11 Cal.5th at p. 1015 ["Courts deciding an anti-SLAPP motion . . . must consider the claim's elements, the actions alleged to

12

establish those elements, and whether those actions are protected"].)

Thus, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra*, 2 Cal.5th at p. 1060.) "Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16." (*Baral, supra*, 1 Cal.5th at p. 394.)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park, supra*, 2 Cal.5th at p. 1067.)

## B. Analysis

Owners alleged two causes of action for inverse condemnation/regulatory taking, a cause of action for denial of substantive due process for "spot zoning" without a rational basis, and a cause of action seeking a declaratory judgment stating that the City's actions "constitute a taking." We "consider the elements" of these claims, and "what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra*, 2 Cal.5th at p. 1063.)

"As a general matter, so long as a land use regulation does not constitute a physical taking or deprive a property owner of all viable economic use of the property, such a restriction does not violate the takings clause insofar as it governs a property owner's future use of his or her property,[ ] except in the unusual circumstance in which the use restriction is properly found to go 'too far' and to constitute a 'regulatory taking' under the ad hoc, multifactored test discussed by the United States Supreme Court

13

in *Penn Central Transp. Co. v. New York City* (1978) 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (*Penn Central*)." (*California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 462 (*California Building*), citing *Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528, 538-539.)

"The factors identified in *Penn Central* include the 'economic impact of the regulation on the claimant,' 'the extent to which the regulation has interfered with distinct investment-backed expectations,' and 'the character of the governmental action.'" (*California Building, supra*, 61 Cal.4th at p. 462, fn. 13 citing *Penn Central, supra*, 438 U.S. at p. 124.) A taking may also occur when the land-use regulation at issue does not substantially advance legitimate state interests. (*San Remo Hotel L.P. v. City and County of San Francisco* (2002) 27 Cal.4th 643, 664.)

An alleged due process violation in the context of land use requires a unique showing. "Typical land use disputes involving alleged procedural irregularities, violations of state law, and unfairness ordinarily do not implicate substantive due process," thus "some form of outrageous or egregious conduct constituting 'a true abuse of power' is required to establish a substantive due process violation." (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 856; see also *Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1034 ["'To succeed in a § 1983 suit for damages for a substantive due process . . . violation, a plaintiff must at least show that state officials are guilty of grave unfairness in the discharge of their legal responsibilities'"].)

Owners alleged that the City's "failure and refusal to zone the Property to allow any economically viable" use of the property constituted a taking and a denial of their due process rights.

14

They alleged the City engaged in a pattern of "continued failure and refusal to take action to rezone" the property.  Owners further asserted that the City, "through [its] myriad land-use restrictions, have required [Owners] to shoulder the entirety of the economic burden" associated with rendering the property unavailable for any use except open space.  Owners assert such actions lacked rational basis.

The parties agree that enacting zoning is not protected activity under section 425.16.  (See, e.g., *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 354, 357 ["Acts of governance mandated by law, without more, are not exercises of free speech or petition"; "[t]o decide otherwise would significantly burden the petition rights of those seeking mandamus review for most types of governmental action"].)  The City argues that nevertheless, the "FACC is replete with allegations of protected activity that are allegedly part of the 'decades-long effort' and 'orchestrated scheme' by the City" to deprive Owners of economically viable uses of their property, and therefore "are clearly the part of the 'wrong complained of.'"  The City points to three categories of protected speech[4] it claims form the basis for Owners' claims: The City's opposition to the Board's extension of power plant operations, the City's writ petition opposing the Board's extension of power plant operations, and public statements by City officials and residents about the future of the property.

_____

[4]     The City identified five categories of speech in its motion below, and has collapsed them into three categories on appeal. For purposes of this appeal, we assume for the sake of argument that each of these categories or instances of speech constitutes protected activity under section 425.16.

15

The FACC does indeed include extensive allegations about the history of the property and how the City reached its zoning decisions. But these allegations put the City's zoning decisions into a certain context—they demonstrate the history of the zoning (which has not changed since 2010), and support Owners' contention that the City had a certain motive for making the zoning decisions that it did (to accomplish the alleged taking at a low cost to the City).

The protected activities alleged in the FACC, however, are not the basis for Owners' causes of action. Owners' claims focus on the restrictions on the use of their property and how those restrictions impact Owners. The causes of action do not rely upon any motives or intentions guiding the City's actions. "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra*, 1 Cal.5th at p. 394.)

The Supreme Court discussed this distinction in *Park, supra*, stating that a "claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra*, 2 Cal.5th at p. 1062.) The court explained, "[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity . . . Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id*. at p. 1060.) The court also stated, "[T]o read the 'arising from' requirement differently, as applying to speech leading to an action or evidencing an illicit motive, would, for a range of publicly beneficial claims, have significant impacts the Legislature likely

16

never intended.  Government decisions are frequently 'arrived at after discussion and a vote at a public meeting.' [Citation.] Failing to distinguish between the challenged decisions and the speech that leads to them or thereafter expresses them 'would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power.'" (*Id*. at p. 1067.)

The reasoning articulated in *Park* is applicable here.  The plaintiff in *Park*, a professor, alleged the defendant university discriminated against him based on his Korean national origin when he was denied tenure.  The university argued the plaintiff's claims arose from protected activity—its decision to deny him tenure and the communications that led up to and followed that decision.  The Supreme Court found that the plaintiff's claims did not arise from protected activity: "The elements of Park's claim . . . depend not on the grievance proceeding, any statements, or any specific evaluations of him in the tenure process, but only on the denial of tenure itself and whether the motive for that action was impermissible.  The tenure decision may have been communicated orally or in writing, but that communication does not convert Park's suit to one arising from such speech.  The dean's alleged comments may supply evidence of animus, but that does not convert the statements themselves into the basis for liability." (*Park, supra*, 2 Cal.5th at p. 1068.)

Similarly here, the City's stated positions about zoning for the property or its hopes for the property's future are not the basis for Owners' claims.  Rather, the only basis for the Owners' claims is the restrictive zoning that allegedly deprives Owners of economically viable uses of the property.  As the City recognized in its reply brief below, if all of the allegedly protected speech were stripped out of the FACC, the Owners' claims would be

17

reduced to an allegation that by adopting the "generating plant zone" in 2010 and not changing the zoning thereafter, the City effected a taking and/or violated Owners' constitutional rights. Indeed, that appears to be Owners' allegation.

Owners' claims are not based on any communications evidencing the City's opinions about the best use of the property. As the Supreme Court stated in *Park*, there must be "'a careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication.'" (*Park, supra*, 2 Cal.5th at p. 1064.) "Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'" (*Id*. at p. 1063, quoting *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) Owners do not allege they were directly damaged by the mayor's or community activists' remarks about wanting the property to be used as park space. No taking was effected by these comments. Rather, the alleged taking occurred through the City's enactment of certain zoning and/or refusal to enact different zoning, which is not protected activity. Owners' claims did not "arise from" the speech evidencing the City's motives for its zoning decisions.

Owners' claims also did not arise from the City's position about the operation of the power plant. Although the City opposed the Board's extension of power plant operations and filed the writ petition challenging the Board's decision, "a claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim. Rather, the protected activity must 'supply elements of the

18

challenged claim.'" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621.) Here, the City's opposition to the Board's actions may evidence the City's preferences—that it did not want power plant operations to continue—but it does not supply an element of Owners' takings or due process causes of action. Owners have not alleged any effects from the City's opposition.

The City also argues the trial court should have granted its motion by striking the allegations of protected activity from the FACC, even if entire causes of action could not be stricken. The Supreme Court has discussed how courts should address anti-SLAPP motions "when a plaintiff has pleaded what is sometimes loosely referred to as a '"mixed cause of action"'— that is, a cause of action that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not." (*Bonni, supra*, 11 Cal.5th at p. 1010, citing *Baral, supra*, 1 Cal.5th at p. 382.) In this situation, "an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." (*Baral, supra*, 1 Cal.5th at p. 393.) We find no error, because Owners have not asserted mixed causes of action. For the reasons discussed above, no part of the takings and due process claims arise from protected activity.

Because the City failed to demonstrate that Owners' claims arise from protected activity, the burden did not shift to Owners to demonstrate a probability of success on their causes of action. We therefore do not address the parties' contentions as to the second step of the anti-SLAPP analysis.[5]

---

[5] The City filed a request for judicial notice of a document relating to whether Owners' claims are ripe, an issue the parties

## DISPOSITION

The ruling denying the special motion to strike is affirmed. Owners are entitled to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

We concur:


MORI, J.


ZUKIN, J.

---

discuss in relation to their second-step arguments.  Because we do not reach the parties' second-step arguments, the document is not relevant to our analysis and we deny the City's request for judicial notice. (See, e.g., *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 687 fn. 10 ["an appellate court 'may decline to take judicial notice of matters not relevant to dispositive issues on appeal'"].)